NARES, Acting P. J.
*159 Kevin Megown beat Michelle R., the mother of his child. After one incident where Michelle's mother, Maria R., came to aid her, Megown threatened to kill both of them as he held a gun. A jury convicted Megown of violating a domestic violence restraining order ( Pen. Code, § 273.6, subd. (a) ), possessing an assault weapon ( *160 Pen. Code, § 30605, subd. (a) ), and inflicting corporal injury on a cohabitant ( Pen. Code, § 273.5, subd. (a) ). It also found true allegations that he inflicted great bodily injury ( Pen. Code, § 1192.7, subd. (c)(8) ) in circumstances involving domestic violence ( Pen. Code, § 12022.7, subd. (e) ). The jury also acquitted on some counts and could not reach a verdict on several *915 others. Megown was retried on some of the unresolved counts.
A second jury convicted Megown of inflicting corporal injury on a cohabitant ( Pen. Code, § 273.5, subd. (a) ), three counts each of criminal threats ( Pen. Code, § 422 ) and assault with a semiautomatic firearm ( Pen. Code, § 245, subd. (b) ). The jury also found true allegations that Megown personally used a firearm ( Pen. Code, §§ 1192.7, subd. (c)(8), 12022.5, subd. (a) ). The trial court sentenced Megown to a total term of 17 years in prison.
Megown claims the trial court erred by: (1) admitting past uncharged acts of domestic violence under Evidence Code section 1109 with respect to the counts involving Maria, (2) admitting evidence of abuse that occurred more than 10 years before the charged crimes, (3) giving CALCRIM No. 875 (assault with a firearm) without modification, and (4) failing to stay the sentence on one of the criminal threats counts under Penal Code section 654. He also claims that the abstract of judgment should be amended to accurately reflect the trial court's oral pronouncement and that the cumulative effect of the above errors require reversal. In a supplemental brief, Megown argues that the matter must be remanded to the trial court so it may exercise its discretion in determining whether to strike the firearm enhancements.
In the published portion of this opinion, part I, we conclude the trial court did not err in admitting uncharged crimes evidence under Evidence Code section 1109 with respect to the counts involving Maria because the circumstances of these crimes involved domestic violence. We also conclude that the trial court did not err in admitting evidence of abuse that occurred more than 10 years before the charged crimes.
In the unpublished portions of our opinion, parts II through VI, we conclude that: (1) the trial court erred when it failed to stay the sentence on one of the criminal threats counts under Penal Code section 654, (2) the abstract of judgment should be corrected, and (3) the matter must be remanded to the trial court to exercise its discretion in determining whether to strike the firearm enhancements. We reject Megown's remaining arguments.
FACTUAL BACKGROUND
Megown and Michelle started dating in 1998. They had a child together in 2010 and began living together in 2012. Over the course of her 16-year *161 relationship with Megown, Michelle estimated that he became physically violent with her about 10 times each year. Lauren A. lived next door to the couple from 2013 until approximately 2016. She recalled hearing Michelle yell about Megown not being at home and not being engaged with the couple's son. On three or four occasions she heard Megown yell that he was going to kill Michelle. She remembered three incidents when she heard a commotion at the couple's home, like furniture moving and something being thrown against furniture.
2014 Incident Against Michelle-Count 1
On a day in March 2014 the couple argued about Michelle's claims that Megown did not spend time with their son, did not provide financial support, and had sex with prostitutes he met online. The argument turned physical when Megown grabbed Michelle by her neck with both hands and forced her to the floor. Megown told her that he was going to kill her, that he hated her, and that she was a "cunt." Eventually, Michelle lost consciousness. She later went to the hospital due to her painful injuries. She lied to the hospital staff about the cause of her injuries, claiming that a stranger had grabbed her by the *916 neck. The examining doctor concluded that Michelle's injuries were consistent with strangulation.
2015 Incident Against Michelle-Counts 9 to 11
On a day in July 2015 Megown and Michelle argued because she had spent the day at Comic Con. Megown became enraged, told her "I'm going to kill you," grabbed her, and slammed her into a wall. He put both of his hands around her neck and pinned her against the wall as he continued to say he would kill her and that he hated her. Megown punched Michelle in the face and in the back of her head several times. He also kicked her in her lower back and hips as he told her that he wanted to kill her. Michelle was "very afraid."
Megown picked Michelle up and threw her against a door, knocking her unconscious. When Michelle regained consciousness, Megown was dragging her across the floor while stating, "I'm going to fucking kill you. I'm going to kill you. I fucking hate you." When Michelle attempted to flee, Megown grabbed her by the neck and slammed her onto the couch. Eventually, Michelle dropped to the floor. Michelle then heard clicking and knew that Megown had retrieved his gun. Megown pointed the gun at her stating that he was going to kill her and that, as Michelle looked toward the door, "If that door moves I'm putting a round through you." Megown's finger was on the trigger-something he had told Michelle to do only when ready to shoot. With the gun pointed at Michelle's head he repeated, "I'm going to kill you."
*162 When Megown finally walked away, Michelle called Maria for help. She did not call the police because Megown had told her over the years that if she called the police he would claim she attacked him, that she was a bad mother, and that her son would be taken away.
2015 Incident Against Michelle and Maria-Counts 12 to 15 and 17
When Maria arrived she confronted Megown and asked him what he had done. Megown retrieved his gun and pointed it at Maria's head with his finger on the trigger. Megown said, "Fuck you, you fucking cunt, I'll kill you." He then alternated pointing the gun at each victim's forehead. Megown stated that he was going to kill both Michelle and Maria as he did this. The women fled when Megown went into the bedroom, but they did not call the police because Megown had threatened to kill them if they did. Although Maria wanted to call the police, Michelle told her that she would not talk to the police because she was afraid of Megown and afraid for her son. Michelle took photographs of her injuries.
Disobeying Court Order-Count 18
In August 2015 Michelle obtained a restraining order against Megown. He was served with the order the same day. The order specified that Megown was not to go to the couple's shared home. About an hour after being served with the order, Megown drove to their home. Michelle and Maria locked themselves inside the house and barricaded the door. Michelle called 911 as Megown attempted to force his way into the house. Megown fled when Michelle yelled that the police were on their way.
Prior Unreported and Uncharged Incidents of Domestic Violence
At trial, the prosecutor asked Michelle about five prior instances of domestic violence that were not charged in the case. In 2004 an argument turned physical when Megown threw her on a futon, pinned her down and eventually grabbed her neck. In 2007 Megown threw a full water bottle at Michelle while the couple argued about his drinking. When Michelle started yelling, *917 Megown threw her to the floor, pinned her down with his knee on her back and struck her twice. In 2008 Michelle got upset when Megown's father came into the couple's hotel room intoxicated. While arguing, Megown threw her against the wall, onto the bed and then the floor. In 2012, while arguing about finances, Megown grabbed Michelle by the neck, shook her and told her to shut up. Finally, in 2013 the couple argued about his drinking as they left a baseball game. Megown grabbed Michelle's throat and pinned her against the car window until she lost consciousness. *163 Defense Evidence
Megown was not asked about, or did not remember, the uncharged incidents relayed by Michelle. Nonetheless, he admitted that there were times when he and Michelle became physical during arguments. On the day of the 2015 charged incidents, Megown remembered arguing with Michelle about Comic Con. Megown claimed that Maria came over carrying a machete and that he barricaded himself in the bedroom. He denied drawing a gun on Michelle or Maria and claimed that he never threatened to kill Michelle and Maria that evening. When asked whether he had ever threatened to kill Michelle, Megown responded, "Never."
Megown admitted that he and Michelle got physical with each other during arguments. He also admitted that he went to the couple's joint home after being served with the restraining order to retrieve his belongings thinking that Michelle would not be there. When he tried to unlock the front door, Michelle and Maria started yelling at him. He left and drove to a police station.
DISCUSSION
I. ALLEGED EVIDENTIARY ERROR
A. Additional Background
The prosecution filed a pretrial motion seeking to introduce Megown's prior acts of violence against Michelle beginning in 1999 as propensity evidence under Evidence Code 1 section 1109, subdivision (a)(1), and section 1101, subdivision (b) ( section 1101(b) ), as evidence of Megown's intent to harm Michelle, his motive to control her, and his common plan and scheme.
Prior to the second trial the court conducted a section 352 analysis and ruled that Megown's pattern of violence was "highly relevant" and "not unduly inflammatory." The trial court noted that the past incidences were "at most" equivalent to or less egregious than the charged acts. The court stated that it had allowed evidence to be presented at the first trial that the physical abuse started in 1999 and again concluded that Michelle could testify that the pattern of abuse began in 1999, but that she could not describe details until the 2004 incident. Defense objected to this evidence under section 352.
B. General Legal Principles
Ordinarily, evidence of prior criminal acts is inadmissible to show a defendant's disposition to commit such acts. ( § 1101, subd. (a).) An exception *164 to this rule exists for cases involving domestic violence. ( § 1109, subd. (a)(1).) In enacting section 1109, the Legislature "considered the difficulties of proof unique to the prosecution of [domestic violence cases] when compared with other crimes where propensity evidence may be probative but has been historically prohibited." ( People v. Brown (2000) 77 Cal.App.4th 1324, 1333-1334, 92 Cal.Rptr.2d 433.) *918 Section 1101 does not prohibit "the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, [or] absence of mistake or accident ...) other than his or her disposition to commit such an act." ( § 1101(b).) Additionally, "[n]othing in this section affects the admissibility of evidence offered to support or attack the credibility of a witness." ( § 1101, subd. (c).)
Evidence admissible under section 1101(b) or section 1109 is subject to exclusion under section 352 if the probative value of the evidence is outweighed by a danger of undue prejudice. (See People v. Escobar (2000) 82 Cal.App.4th 1085, 1095, 98 Cal.Rptr.2d 696.) " 'The "prejudice" referred to in ... section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying section 352, "prejudicial" is not synonymous with "damaging." ' " ( People v. Karis (1988) 46 Cal.3d 612, 638, 250 Cal.Rptr. 659, 758 P.2d 1189.) "[E]vidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction. In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose." ( People v. Doolin (2009) 45 Cal.4th 390, 439, 87 Cal.Rptr.3d 209, 198 P.3d 11.)
"The weighing process under section 352 depends upon the trial court's consideration of the unique facts and issues of each case, rather than upon the mechanical application of automatic rules." ( People v. Jennings (2000) 81 Cal.App.4th 1301, 1314, 97 Cal.Rptr.2d 727.) The record must affirmatively show that the trial judge did in fact weigh prejudice against probative value, but no more is required. ( People v. Clair (1992) 2 Cal.4th 629, 660, 7 Cal.Rptr.2d 564, 828 P.2d 705.) We review the trial court's exercise of discretion in admitting evidence under section 352 for abuse and will not disturb the court's ruling "except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ( People v. Rodriguez (1999) 20 Cal.4th 1, 9-10, 82 Cal.Rptr.2d 413, 971 P.2d 618.)
*165 C. Analysis
1. Admission of uncharged crimes evidence for counts against Maria
Megown asserts that the court abused its discretion in allowing his prior uncharged acts of domestic violence into evidence to resolve the counts as to Maria. He notes that the court failed to consider whether the prior acts of domestic violence that he committed against Michelle could be admitted under section 1109 or section 1101(b) as to the counts involving Maria, counts that he claims did not involve domestic violence. Thus, he claims that the court abused its discretion by failing to make a reasoned determination that this evidence was admissible as to Maria under either section 1109 or 1101(b). We disagree.
Section 1109 provides, in relevant part, "in a criminal action in which the defendant is accused of an offense involving domestic violence , evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352." ( § 1109, subd. (a), italics added.) Evidence Code section 1109 defines "domestic violence" by referencing Penal Code section 13700 and *919 Family Code section 6211. ( § 1109, subd. (d)(3).) Under Penal Code section 13700, subdivision (b), " '[d]omestic violence' means abuse committed against an adult or a minor who is a spouse, former spouse, cohabitant, former cohabitant, or person with whom the suspect has had a child or is having or has had a dating or engagement relationship." Under Family Code section 6211, " '[d]omestic violence' is abuse perpetrated against any of the following persons: [¶] (a) A spouse or former spouse. [¶] (b) A cohabitant or former cohabitant, as defined in [Penal Code] Section 6209. [¶] (c) A person with whom the respondent is having or has had a dating or engagement relationship. [¶] (d) A person with whom the respondent has had a child, where the presumption applies that the male parent is the father of the child of the female parent under the Uniform Parentage Act (Part 3 (commencing with [Penal Code] Section 7600) of Division 12). [¶] (e) A child of a party or a child who is the subject of an action under the Uniform Parentage Act, where the presumption applies that the male parent is the father of the child to be protected. [¶] (f) Any other person related by consanguinity or affinity within the second degree."
In turn, Penal Code section 13700 defines "[a]buse" as "intentionally or recklessly causing or attempting to cause bodily injury, or placing another person in reasonable apprehension of imminent serious bodily injury to himself or herself, or another ." ( Pen. Code, § 13700, subd. (a), italics added.) The court instructed the jury with CALCRIM No. 852 which proved these definitions of "domestic violence" and "abuse."
*166 The application of section 1109 to the present case turns on whether Megown was "accused of an offense involving domestic violence." ( § 1109, subd. (a)(1).) Here, Megown was accused of assaulting with a firearm and threatening Michelle (his cohabitant) and Maria (his cohabitant's mother) in a single incident where both victims were present. Megown argues that his prior acts of domestic violence were improperly admitted into evidence to prove his crimes against Maria because Maria is not within the class of persons to whom section 1109 applies.
This argument, however, ignores the language of section 1109, which allows the introduction of prior domestic crimes evidence "in a criminal action in which the defendant is accused of an offense involving domestic violence ...." ( § 1109, subd. (a), italics added.) Being "accused of an offense involving domestic violence" is broader than domestic violence which is defined as abuse committed against one of certain defined individuals. To "involve" means "to include, contain, or comprehend within itself or its scope." (Random House Unabridged Dict. (2d ed. 1993) p. 1005.)
Here, Megown's crimes against Maria took place in Michelle's presence. When Megown pointed a gun at Maria's head and threatened to kill her, Michelle was reasonably apprehensive about imminent injury to Maria. Because Megown's crimes against Maria took place in Michelle's presence, they were crimes that involved domestic violence. While the focus of section 1109 is to protect domestic violence victims by allowing them to show a pattern of abuse, nothing in section 1109 precluded the introduction of such evidence in these circumstances. Accordingly, the trial court did not err in instructing the jurors that they could consider Megown's prior acts of domestic violence as to the crimes charged against Maria.
Megown also contends the trial court erred in allowing the jury to consider his history of domestic violence as to the crimes against Maria under section 1101(b) because motive, plan, or scheme was not material to those counts.
*920 "A 'motive' is defined as a '[c]ause or reason that moves the will and induces the action[,]' '[a]n inducement, or that which leads or tempts the mind to indulge a criminal act.' [Citation.] Motive is an intermediate fact which may be probative of such ultimate issues as intent [citation], identity [citation], or commission of the criminal act itself [citation]." ( People v. Scheer (1998) 68 Cal.App.4th 1009, 1017-1018, 80 Cal.Rptr.2d 676.) " '[T]he intermediate fact of motive' may be established by evidence of 'prior dissimilar crimes.' " ( Id. at p. 1018, 80 Cal.Rptr.2d 676.)
Here, evidence that Megown committed uncharged acts of domestic violence toward Michelle in the past was relevant to prove that Megown not *167 only threatened and assaulted Michelle with a firearm during the 2015 incident, but that he also committed these crimes toward Maria when Maria came to Michelle's aid. The evidence also tended to prove a common plan or scheme of threatening victims to prevent them from contacting the police.
Moreover, even if we were to agree that Megown's acts toward Maria did not constitute domestic violence within the meaning of section 1109 and that this evidence was also inadmissible as to the counts pertaining to Maria under section 1101(b), we would not reverse. Error in admitting evidence of a defendant's prior acts of domestic violence under sections 1109 or 1101 is subject to the standard of prejudice set forth in People v. Watson (1956) 46 Cal.2d 818, 299 P.2d 243 ( Watson ). (See People v. Ogle (2010) 185 Cal.App.4th 1138, 1145, 110 Cal.Rptr.3d 913 [any error in admitting uncharged act of domestic violence was harmless under Watson ]; People v. Welch (1999) 20 Cal.4th 701, 750, 85 Cal.Rptr.2d 203, 976 P.2d 754 [admission of evidence prohibited by § 1101 is reviewed under the Watson harmless error standard].) Under the Watson test, the trial court's judgment may be overturned on appeal only if the defendant shows "it is reasonably probable that a result more favorable to the [defendant] would have been reached in the absence of the error." ( Watson , at p. 836, 299 P.2d 243.)
Here, Megown does not dispute that the prior domestic crimes evidence was admissible as to all of the charged crimes against Michelle. As to the 2015 incident involving both Michelle and Maria, the jury needed to assess the credibility of Michelle's and Maria's versions of the incident versus Megown's version of the incident. Michelle and Maria gave corroborating accounts of the 2015 incident and a neighbor testified regarding Megown's use of death threats. The jury's guilty verdicts for the 2015 charges show that the jury believed Michelle and Maria. It is not reasonably probable that Megown would have obtained a better result if the trial court had instructed the jury that the prior domestic crimes evidence was not to be considered as to the crimes alleged where Maria was the victim. ( Watson , supra , 46 Cal.2d at p. 836, 299 P.2d 243.)
2. Admission of remote evidence
Megown asserts the trial court erred in admitting evidence of his abuse of Michelle that occurred more than 10 years before the charged crimes. Specifically, he argues the trial court erred in allowing Michelle to testify (1) that the abuse started in 1999 and occurred about 10 times a year, and (2) about an incident that occurred in 1999 where Megown pushed Michelle against a wall and then threw her on a couch (together the remote evidence). He asserts this testimony was presumptively inadmissible under section 1109, amounted to bad character evidence, and undermined his defense.
*168 "Evidence of acts occurring more than 10 years before the charged *921 offense is inadmissible ... unless the court determines that the admission of this evidence is in the interest of justice." ( § 1109, subd. (e).) The statute "clearly anticipates that some remote prior incidents will be deemed admissible and vests the courts with substantial discretion in setting an 'interest of justice' standard." ( People v. Johnson (2010) 185 Cal.App.4th 520, 539, 110 Cal.Rptr.3d 515.) "[T]he 'interest of justice' exception is met where the trial court engages in a balancing of factors for and against admission under section 352 and concludes ... that the evidence was 'more probative than prejudicial.' " ( Id. at pp. 539-540, 110 Cal.Rptr.3d 515.) We review the court's ruling for abuse of discretion. ( Id. at p. 539, 110 Cal.Rptr.3d 515.)
"Character evidence, sometimes described as evidence of a propensity or disposition to engage in a type of conduct, is generally inadmissible to prove a person's conduct on a specified occasion." ( People v. Villatoro (2012) 54 Cal.4th 1152, 1159, 144 Cal.Rptr.3d 401, 281 P.3d 390.) Critically, section 1109 is "an express exception to the prohibition against [bad character or] propensity evidence set forth in ... section 1101, subdivision (a)." ( People v. Fruits (2016) 247 Cal.App.4th 188, 202, 202 Cal.Rptr.3d 8.) "[T]he statute reflects the legislative judgment that in domestic violence cases, as in sex crimes, similar prior offenses are 'uniquely probative' of guilt in a later accusation. [Citation.] Indeed, proponents of the bill that became section 1109 argued for admissibility of such evidence because of the 'typically repetitive nature' of domestic violence. [Citations.] This pattern suggests a psychological dynamic not necessarily involved in other types of crimes." ( Johnson , supra , 185 Cal.App.4th at p. 532, 110 Cal.Rptr.3d 515, fns. omitted.)
The trial court, which allowed Michelle to state that the abuse started 16 years earlier and was continuous, recognized the unique "probative value" of such evidence to establish a "pattern of ... violence" and found the evidence "highly relevant." We agree; this evidence created a strong inference that Megown had a propensity to commit the acts that Michelle described. This history of abuse was also relevant to Michelle's fear and her earlier refusals to seek help or call the police. Moreover, Michelle's generalized statements and the brief details provided about the 1999 incident were less aggravated or inflammatory than the charged offenses. There is no reasonable likelihood that the result would have been more favorable to Megown had the trial court excluded the 1999 incident and the testimony that Megown regularly became physically violent with Michelle thereafter. The trial court acted well within its discretion in admitting the remote evidence in the interests of justice.
Megown claims the trial court erred by failing to inquire into the specifics of this evidence to determine whether the prior incidents even qualified as domestic violence. Based on this failure, he contends the trial court lacked *169 the information to evaluate the admissibility of the remote evidence under section 352. In his motions in limine, Megown objected to the remote evidence under section 352 and requested a "pretrial hearing" to litigate the admissibility of the prior incidents outside the presence of the jury.
At the hearing on the in limine motions the trial court conducted a section 352 analysis after defense counsel reiterated his objection under section 352. At the hearing, defense counsel never expressed a concern that the prior incidents did not qualify as domestic violence, nor did he request a section 402 hearing to litigate this issue. By failing to raise his request for a pretrial hearing under section 402 when the court ruled on the in limine motions or before Michelle testified, defense *922 counsel forfeited his request. (See People v. Williams (1997) 16 Cal.4th 153, 196, 66 Cal.Rptr.2d 123, 940 P.2d 710 ["[T]he trial court was not bound to provide, unprompted, additional hearings under ... section 402 merely because it had earlier suggested it would do so 'at the appropriate time.' "].)
II.-VI.**
DISPOSITION
The judgment of conviction is affirmed. The sentence is vacated and the matter is remanded to the trial court with directions to (1) stay the sentence on count 10 under Penal Code section 654, and (2) exercise its discretion whether to strike or dismiss the firearm enhancements or punishment under Penal Code sections 1385, 12055.2, subdivision (c) and 12022.53, subdivision (h), and, if appropriate following exercise of that discretion, to resentence defendant accordingly. We further direct the trial court to correct its minute order of the previous sentencing hearing to indicate that the sentence on count 15 is stayed and, following resentencing, to prepare an amended abstract of judgment reflecting all modifications. The court shall forward a certified copy of this amended abstract to the Department of Corrections and Rehabilitation.
WE CONCUR:
DATO, J.
GUERRERO, J.

See footnote *, ante .