Filed 8/26/20  P. v. Roark CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>BRANDEN ROARK,<br><br>    Defendant and Appellant. | F077855<br><br>(Super. Ct. No. BF169385A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Gary T. Friedman, Judge.

James Bisnow, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and Timothy L. O'Hair, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Branden Roark challenges his convictions stemming from two domestic violence incidents. He raises two claims on appeal.

First, Roark contends the court erroneously permitted evidence he abused animals during his relationship with the victim. Second, he argues the prosecutor committed error by inquiring into the motivation underlying the victim's testimony. We affirm.

## BACKGROUND

**Charges**

The Kern County District Attorney charged Roark with committing four crimes: assault with force likely to cause great bodily injury (Pen. Code, § 245, subd. (a)(4), count 1); felony domestic violence (Pen. Code, § 273.5, subd. (a), count 2); battery resulting in serious bodily injury (Pen. Code, § 243, subd. (d), count 3); and felony domestic violence (Pen. Code, § 273.5, subd. (a), count 4). As to counts 1 and 2, the district attorney alleged Roark personally inflicted great bodily injury while committing domestic violence (Pen. Code, § 12022.7, subd. (e)) and that he suffered a prior strike conviction (Pen. Code, §§ 667, subds. (b)-(i) & 1170.12, subds. (a)-(j)).

**Trial Evidence**

The victim testified at trial to several charged and uncharged incidents of domestic violence. The evidence relevant to the charged conduct established Roark once "slammed" the victim onto a couch. The slamming resulted in various bruises to the victim's "legs," "knees," "chest," "neck," and "arms." On another occasion, he strangled the victim. The victim testified that, during the strangling, "I was blacking out," and "I was unconscious."

The evidence of uncharged domestic violence covered general and specific instances. Two specific instances were featured prominently. In one, Roark punched and bruised the victim's arm. In the other, he bit the victim's wrist leaving "fingernail" and "teeth marks."

2

The victim's neighbor also testified at trial. The victim and neighbor lived in a duplex sharing a common wall. The neighbor testified she heard "[y]elling," "[s]creaming," and "[b]anging" from within the victim's residence on an "almost" daily basis. She also heard Roark hitting the victim through the wall. She "called the police" "many times" but Roark was never arrested.

**Verdict and Sentence**

Roark was convicted as charged. The great bodily injury and prior strike allegations were found true. He was sentenced to serve 15 years in prison.

## DISCUSSION

### I. The Animal Abuse Evidence Was Properly Admitted

The animal abuse evidence was offered under two theories: Propensity and intimate partner battering. We find the evidence properly admissible under both theories.

#### A. Additional Background

Prior to trial, the prosecutor filed a motion seeking to introduce evidence of "incidents of animal cruelty to multiple dogs," pursuant to Evidence Code[1] section 1109. During the hearing on the motion, the prosecutor argued the evidence was relevant to explain intimate partner battering and why domestic violence victims do not immediately report crimes. At Roark's request, the court held a section 402 hearing. The court acknowledged it must conduct a section 352 evaluation prior to ruling on admissibility.[2]

Various witnesses, including the victim, the neighbor, and an expert on intimate partner battering, testified regarding animal abuse. The victim testified Roark abused three different dogs. One, he would drag the family dog around by the collar. Two, he killed a dog by twisting its leg until it was bleeding and then stomping on the bloody leg. On a third incident, a puppy died while the victim was away from the home. Roark later

---

[1]     Undesignated statutory references are to the Evidence Code.

[2]     It appears from the record the court never formally ruled on the motion.

showed the victim a video of the puppy having a seizure. The victim explained the puppy's eyes were bloodied, its mouth was foaming, and there was excrement on the wall above a closet.

The victim's neighbor described a particular incident in which she heard sounds "[l]ike a dog that's being tortured whining." She left her residence because she "couldn't take the sounds anymore." Moments later she saw Roark "holding [a dog] around the neck and its lifeless body."

The expert testified "[t]he cycle of violence is frequently used as a way to explain how domestic violence incidences occur." According to the expert, "Studies have shown that in almost 60 percent of domestic violence relationships, there is both animal and child abuse happening concomitantly in the home." Animal abuse fits into the cycle of violence because it "[m]aintain[s] control and the victim remains in the relationship." Animal abuse is typically committed to instill fear. Domestic violence is commonly unreported due to, amongst other reasons, shame and embarrassment.

The court read several limiting instructions in relation to the jury throughout the trial. For example, the court explained that expert "testimony about intimate partner violence or battery is not evidence that the accused … committed any of the crimes charged against him. You may consider this evidence only in deciding whether or not [the victim's] conduct was not inconsistent with the conduct of someone who has been abused and in evaluating" the victim's credibility. (CALCRIM No. 850.) The court repeated this limitation in its final instructions.

The court also informed the jury that uncharged domestic violence; "specifically, biting [the victim's] wrist" was admissible only to prove Roark was "disposed or inclined to commit domestic violence." (CALCRIM No. 852(a).) In its final instructions, the court modified the instruction by referring instead to uncharged domestic violence generally.

4

In closing argument, the prosecutor stated, "The defendant used [the] animals to terrorize" the victim, including "[t]orturing innocent and helpless puppies." The prosecutor, while referring to domestic violence propensity, listed several examples of uncharged domestic violence from the trial but did not include animal abuse in the list. The prosecutor concluded the evidence, including "abusing animals," presented the "typical domestic violence cycle of violence." No photographs or videos depicting animal abuse were presented to the jury.

## B.    Analysis

"Ordinarily, evidence of prior criminal acts is inadmissible to show a defendant's disposition to commit such acts. (§ 1101, subd. (a).) An exception to this rule exists for cases involving domestic violence. (§ 1109, subd. (a)(1).) In enacting section 1109, the Legislature 'considered the difficulties of proof unique to the prosecution of [domestic violence cases] when compared with other crimes where propensity evidence may be probative but has been historically prohibited.'" (*People v. Megown* (2018) 28 Cal.App.5th 157, 163-164 (*Megown*).) Animal abuse may constitute domestic violence under section 1109.[3] (*People v. Kovacich, supra,* 201 Cal.App.4th at p. 895.)

"Evidence admissible under section 1101[, subsection] (b) or section 1109 is subject to exclusion under section 352 if the probative value of the evidence is outweighed by a danger of undue prejudice." (*Megown*, *supra*, 28 Cal.App.5th at p. 164.) "The record must affirmatively show that the trial judge did in fact weigh prejudice against probative value, but no more is required." (*Ibid.*) "We review the trial court's exercise of discretion in admitting evidence under section 352 for abuse and will not disturb the court's ruling 'except on a showing the trial court exercised its discretion in an

---

**3**    Under current law, as interpreted in *People v. Kovacich* (2011) 201 Cal.App.4th 863 (*Kovacich*), animal abuse only constitutes domestic violence "if the act occurred no more than five years before the charged offense." (§ 1109, subd. (d)(3).)

arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.'" (*Ibid*.)

Prior acts of domestic violence are also admissible to substantiate "intimate partner battering and its effects, including the nature and effect of physical, emotional, or mental abuse on the beliefs, perceptions, or behavior of victims of domestic violence, except when offered against a criminal defendant to prove the occurrence of the act or acts of abuse which form the basis of the criminal charge." (§ 1107, subd. (a).) Such evidence is admissible "to disabuse jurors of commonly held misconceptions about victims of domestic violence." (*Kovacich, supra,* 201 Cal.App.4th at p. 902.)

The evidence here was admissible both to prove propensity and explain intimate partner battering. The court acknowledged it must weigh the probative versus prejudicial value before permitting the evidence to prove propensity. Although the court did not explicitly state its reasoning, no more is required. (*Megown, supra,* 28 Cal.App.5th at p. 164.) "'[W]e are willing to infer an implicit weighing by the trial court on the basis of record indications *well short* of an express statement.'" (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1168.)

We cannot conclude the court abused its discretion on this record. No graphic photos or videos were presented in conjunction with the animal abuse testimony. The evidence was appropriately limited with sufficient jury instructions. In these circumstances, particularly the fact the evidence was admissible *both* as propensity and intimate partner battering, we find no error with its admission.

Even were we to assume the court erred, we see no prejudice. Ultimately, even though the animal abuse evidence was admissible to prove domestic violence propensity, the record discloses it was neither presented nor utilized in that manner. Neither the arguments nor the court's instructions directly linked animal abuse to propensity evidence. Instead, it was utilized to bolster the victim's credibility which is specifically permitted by section 1107. The neighbor's testimony provided compelling and credible

corroboration to both the animal abuse and the physical violence. We deny Roark's abuse of discretion claim.

## II. The Prosecutor Did Not Err

Roark contends the prosecutor erred by asking two questions to elicit the motivations underlying the victim's testimony. We discern no error.

### A. Additional Background

The two questions and answers at issue follow. At the end of the victim's direct examination, the prosecutor asked, "[W]hy are you here today?" The victim replied, "I want justice." At the end of the victim's redirect examination, the prosecutor asked, "[A]re you getting anything out of coming here and testifying before us?" The victim replied, "Inner peace."

### B. Analysis

"'[A] prosecutor's conduct violates the federal Constitution when it infects the trial with such unfairness as to make the resulting conviction a denial of due process. Conduct by a prosecutor that does not rise to this level nevertheless violates California law if it involves the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.'" (*People v. Capers* (2019) 7 Cal.5th 989, 1012.)

"At the outset, we question whether this issue is properly considered one of misconduct. 'Although it is misconduct for a prosecutor *intentionally* to elicit inadmissible testimony [citation], merely eliciting evidence is not misconduct. [It appears Roark's] real argument is that the evidence was inadmissible.' [Citation.] Although the prosecutor in this case certainly asked the questions intentionally, nothing in the record suggests" an intent to present inadmissible evidence. (*People v. Chatman* (2006) 38 Cal.4th 344, 379-380.)

Nonetheless, we conclude both the question and answer were permissible. Either party may attack or support the credibility of any witness. (§ 785.) "[I]n determining the credibility of a witness" a "jury may consider … any matter that has any tendency in

7

reason to prove or disprove the truthfulness of … testimony." (§ 780.) Any matter includes but is not limited to "[t]he existence or nonexistence of a bias, interest, or other motive." (§ 780, subd. (f).)

The question here was designed to uncover the victim's motivation, if any, in testifying. The Evidence Code permits such an inquiry. Roark had an equal opportunity to inquire into victim's motivation, reveal concurrent motives, or undermine the expressed motive. Accordingly, we find neither prosecutorial nor evidentiary error. (See *People v. Cunningham* (2001) 25 Cal.4th 926, 1022 ["prosecutor elicit[ing] testimony from" witness that "he feared retaliation" from defendant was admissible "to demonstrate that the witness was credible"].)

## DISPOSITION

The judgment is affirmed.

SMITH, J.

WE CONCUR:

DETJEN, Acting P.J.

MEEHAN, J.

8