Filed 3/2/26  P. v. David CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B337674 |
| Plaintiff and Respondent, | (Super. Ct. No. MA082345) |
| v. | (Los Angeles County) |
| GERMARCUS LAMAR DAVID, | |
| Defendant and Appellant. | |

Germarcus Lamar David appeals from the judgment after a jury convicted him of five counts of first degree murder (Pen. Code, §§ 187, subd. (a), 189, subd. (a)) and three counts of assaulting a child under eight years old causing death (Pen. Code, § 273ab, subd. (a)).  The jury found true the allegation that he personally used a firearm in the commission of the offenses (Pen. Code, § 12022.5, subd. (a)) and five multiple-murder special circumstances (Pen. Code, § 190.2, subd. (a)(3)).  The trial court sentenced David to five consecutive state prison terms of life without parole for the murder counts, plus a determinate term of 50 years (10 years for use of a firearm in each of the murders).

The court stayed the punishment for the assault convictions (Pen. Code, § 654).

David contends the trial court erred when it admitted evidence he committed prior acts of domestic violence, and that it was error for the jury to find more than one multiple-murder special circumstance. We vacate four of the special circumstance findings as duplicative and otherwise affirm.

FACTUAL AND PROCEDURAL HISTORY

*Current offenses*

David and Tyanna B.[1] were together for about 12 years and were married in 2014. At the time of the murders, they had four children together: Namyiah (age 11), Germarcus, Jr. (G.J.) (age 7), Kayden (age 2), and Noah (age 1). Tyanna had a "[v]ery close" relationship with her mother, Erika England. David had a "pretty good relationship" with the children. He also had "a good relationship" with England and no animosity toward her. David and Tyanna argued frequently.

In 2020, Tyanna learned David had fathered a child with another woman. Tyanna "kicked" David out of the house and filed for divorce. Several months later, she allowed David to move back in to help take care of the children and pay expenses. They slept in separate bedrooms. Tyanna did not intend to stay married to David, but he attempted to convince her to stay married. David delayed signing an acknowledgment of the divorce documents.

On November 26, 2021, two days before the murders, Tyanna was in her bedroom, talking and laughing on the phone

---

[1] We refer to Tyanna by her first name to protect personal privacy interests. (Cal. Rules of Court, rule 8.90(b)(10) & (11).) No disrespect is intended.

with a male friend she had known since middle school. When the call ended, David entered her room. He was "frantic." He wrapped one arm around her and pinned her against the backboard of the bed. He pointed a handgun at her stomach. He asked, "You're laughing with him? You're laughing? You're laughing with him?" She said they were just friends. Baby Noah then entered the room. David picked him up and left the room. Tyanna began locking her bedroom door in the evenings out of fear for her safety.

The afternoon before the murders, David went to a pawn shop and purchased a .45 caliber semiautomatic pistol. He completed the paperwork and paid a deposit but could not take the pistol with him because of the 10-day waiting period.

On the evening of November 28, David made hamburgers for Tyanna. She declined to eat them, stating she was not hungry and was meeting girlfriends for a birthday dinner. She said her mother was coming to watch the children.

David left home for work at 5:12 p.m. to begin his 6:00 p.m. to 6:00 a.m. shift as a security guard. England came to the home to watch the children.

As Tyanna was leaving the house for dinner at about 7:00 p.m., she talked to the male friend on the phone. A security system by the front door captured audio and video that David accessed through his cell phone. As she walked to her car, David spoke to her through the security system and repeatedly demanded to know who she was talking to. David phoned her continuously as she was driving and after she arrived at the restaurant. Tyanna ignored the calls.

When David arrived at work at about 6:00 p.m., his demeanor was "perfectly normal." He left work early at 7:51 p.m.

He arrived home at 8:58 p.m.  He backed into the driveway and sat in the car for almost five minutes.  During that period, he called Tyanna twice.

David then entered the house.  About six minutes later, he shot his four children and England with a Glock nine-millimeter handgun in a volley of eight shots, followed by a pause, then another nine shots.  A minute and a half later, he shot Namyiah, Kayden, and England once each with a shotgun.  David left the house at 9:12 p.m., locked the front door, and drove away.

Tyanna answered a call from David at about 9:25 p.m.  He asked repeatedly who she had been talking to.  She said she was at dinner and didn't want to talk.  She answered another call and said she was eating and would call him later.  She called David at about 10:00 p.m., while she was driving home from dinner.  He asked, "[A]re we really over?  We're really done?"  She said they could co-parent, "but as far as you and I are concerned, you know, we're done."  He sounded calm and said, "Okay."

When Tyanna arrived home she discovered the bodies of her mother and her four children.  England's body was on a living room chair.  Kayden and Noah were on the living room floor.  Namyiah was on the kitchen floor and G.J. was on the floor on the other side of the kitchen island.  Tyanna called 911, crying uncontrollably.

David drove to the Lancaster sheriff's station and admitted he "murdered someone."  He was "very calm and matter of fact."

Deputies recovered 17 expended nine-millimeter shells and two expended shotgun shells at the house.  In a bedroom was an empty nine-millimeter Glock magazine with a capacity of 17 cartridges, a shotgun containing one fired shell, and a box for the shotgun.

4

The medical examiner concluded that each victim died of multiple gunshot wounds. England was shot in her chest, foot, and twice in the back, and had a shotgun wound in her abdomen. Namyiah was shot in the neck, and had a shotgun wound to her hip. G.J. was shot twice in the head, once in the back, once in the chest, and once in the arm with the bullet striking his aorta. Kayden was shot in the back, arm, thigh, below the knee, at close range in his face, and had a shotgun wound in the abdomen. Noah was shot in the back and face.

*Prior offenses*

The court granted the prosecution's motion to introduce five prior incidents of domestic violence. (Evid. Code,[2] §§ 1101, subd. (b), 1109.)

In 2010, David slapped Tyanna's face during an argument. She was holding five-month-old Namyiah and the slap almost made them fall over. David had "a lot of anger." Police were called and she obtained a restraining order. They ended their relationship but got back together about a year and a half later.

In 2014, during an argument, David threw a remote control at Tyanna's head. She dodged it and it broke into pieces. In another incident in 2014, David and Tyanna argued about David's mother using Tyanna's car without her permission. When Tyanna tried to get away from David, he broke down the door to get to her.

In 2017 or 2018, David's phone rang around midnight. Tyanna answered the call and heard a female voice. As they wrestled over the phone, David wrapped his arms around her neck and choked her. The incident prompted Tyanna to move in

---

[2] Undesignated statutory references are to the Evidence Code.

5

with her mother. Tyanna and David later got back together and moved into England's house.

As discussed above, two days before the murders, David was angry that Tyanna was talking to a male friend, held her down, and pointed a handgun at her. David did not object to admission of this incident.

The trial court ruled the 2010, 2014, 2017/2018, and 2021 incidents were admissible pursuant to sections 1101, subdivision (b), and 1109. The court found the probative value was not outweighed by undue prejudice or consumption of time pursuant to section 352.[3]

*Closing argument*

During closing argument to the jury, the prosecutor argued that David left work at a time when he knew the children and England would be home. He made sure the handgun and shotgun were loaded and brought them to the rooms where the victims were located. David wanted to be with Tyanna but she didn't want to be with him, so he killed the people she loved the most to make her feel the way he felt.

Defense counsel conceded the case was a homicide, identity was not an issue, and David "shot everyone." Counsel said that from the incident two nights before when David pointed a firearm at Tyanna, "the jealousy and the rage regarding Tyanna having a male friend, possibly a boyfriend, was already stewing in Germarcus's . . . head." Counsel argued he was not guilty of premeditation or deliberation because he was "trying to process

---

[3] The People's motion to admit the prior offenses mentioned another incident in which David "pinned [Tyanna's] entire body down." The trial court excluded this incident as vague, ambiguous, and unknown as to time.

6

the fact that his marriage is dissolving" and he was in an "emotional state." Counsel asked the jury to find David guilty of second degree murder.

## DISCUSSION

David does not contend the evidence of premeditated murder was insufficient and does not dispute admission of the incident two days before the murders. He contends the trial court abused its discretion when it admitted evidence of the 2010, 2014, and 2017/2018 incidents, and that this evidence "tipped the scales" in favor of a verdict of premeditated murder. We disagree. We conclude the prior incidents were properly admitted pursuant to section 1101, subdivision (b) or section 1109.

### *Admissibility of prior acts*

Evidence of prior bad acts is generally "inadmissible when offered to prove [a person's] conduct on a specified occasion." (§ 1101, subd. (a).) But section 1101 does not prohibit "the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, [or] identity . . . .)." (§ 1101, subd. (b).) "The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.)

Prior acts of domestic violence are admissible pursuant to section 1109. It provides that "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352." (§ 1109, subd. (a)(1).) The prior acts are admissible because "there [is] a great likelihood

7

that any one battering episode is part of a larger scheme of dominance and control, [and] that scheme usually escalates in frequency and severity.  Without the propensity inference, the escalating nature of domestic violence is likewise masked." (*People v. Brown* (2011) 192 Cal.App.4th 1222, 1235–1236, italics omitted.)

Evidence admissible under section 1101, subdivision (b) or section 1109 is subject to exclusion "if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  (§ 352.)  " 'The prejudice which exclusion of evidence under . . . section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence. . . . Rather, evidence subject to exclusion under . . . section 352 as unduly prejudicial is evidence ' " 'which uniquely tends to evoke an emotional bias against defendant as an individual and which has very little effect on the issues.' " ' "  (*People v. Wang* (2020) 46 Cal.App.5th 1055, 1076 (*Wang*), quoting *People v. Williams* (2013) 58 Cal.4th 197, 270.)

We review the admission of prior acts pursuant to sections 1101, subdivision (b), 1109, and 352 for abuse of discretion. (*People v. Merchant* (2019) 40 Cal.App.5th 1179, 1192.)  We "will not disturb the court's ruling 'except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' "  (*People v. Megown* (2018) 28 Cal.App.5th 157, 164 (*Megown*).)  We conclude the trial court did not abuse its discretion.

Although the defense conceded during closing argument

that David was guilty of murder, motive was still at issue when the prior incidents were admitted.  The prior incidents were admissible to establish David's motive, which was probative of intent, premeditation, and deliberation.  (*People v. Cage* (2015) 62 Cal.4th 256, 274 (*Cage*).)

This case is similar to *Cage*.  There, evidence of prior acts of violence against the defendant's wife Clari, their daughter, and the wife's brothers, were admissible pursuant to section 1101, subdivision (b), to establish the defendant committed premeditated murder against his wife's mother and one of the brothers.  (*Cage*, *supra*, 62 Cal.4th at pp. 263, 272–273.)  "[D]efendant sought to exert power and control over Clari [and other family members] by both threatening and committing violent, demeaning, and abusive acts against them."  (*Id*. at p. 274.)  The evidence supported a logical inference that the defendant committed the murders "as retribution for Clari's leaving him and taking his son" away to Puerto Rico.  (*Ibid*.)  Here as well, the prior incidents were evidence that David killed his children and mother-in-law as retribution against Tyanna for ending their marriage.

Similarly, in *Wang*, prior acts of domestic violence against the defendant's wife were admissible pursuant to sections 1101 and 1109 in his murder of her parents because the murders were offenses " ' "*involving* domestic violence" ' " (*Wang*, *supra*, 46 Cal.App.5th at p. 1077) and were probative of his motive to control his wife (*id*. at p. 1078).  Here, there is no evidence David harbored animosity toward his children or England.  His prior acts of domestic violence against Tyanna were probative of his motive to harm *her* by murdering her children and mother, and was relevant to premeditation and deliberation.

" '[S]ection 1101, subdivision (b) makes *admissible* the other-crimes evidence when relevancy is predicated on a state-of-mind or state-of-emotion fact which, in turn, leads to an inference of the existence of that same state-of-mind fact at the time of the charged offense, or, that defendant acted in accordance with his state of mind and committed the charged offense.' " (*People v. Spector* (2011) 194 Cal.App.4th 1335, 1383.) In *Spector*, the defendant's prior threats with firearms against women were admissible to "show motive, identity, and the absence of mistake, accident or suicide" in the charged shooting murder of another woman. (*Id.* at p. 1372.) Here, prior incidents of David's domestic violence against his wife were probative of his motive to harm her, which he accomplished by killing her children and mother.

David contends that because the subjects of the arguments in the 2010 slapping incident and the 2014 remote control incident are unknown, David's intent is also unknown. In the second 2014 incident in which David broke down the door, the argument was about David's mother using Tyanna's car. But all the incidents are relevant because whatever issues precipitated the arguments, David sought each time to control and injure Tyanna through violence.

David also contends the 2017/2018 incident was unduly prejudicial because it invited the jury to find he was "an immoral adulterer." We conclude the trial court did not abuse its discretion because the taint of marital infidelity was outweighed by the relevance of David's willingness to violently attack Tyanna to the point of choking her. The trial court properly concluded the prior incidents of violence against Tyanna were less inflammatory than the brutal multiple murders with which he

10

was charged. (*Wang, supra,* 46 Cal.App.5th at p. 1078.) No abuse of discretion has been shown because whatever emotional reaction jurors might have to the prior acts of domestic violence or infidelity pale in comparison to David's brutal murder of his four children and wife's mother.

Because the court did not abuse its discretion in admitting the prior crimes evidence, we conclude their admission did not violate his right to due process. (*People v. Merchant, supra,* 40 Cal.App.5th at p. 1194.)

*Harmless error*

David conceded at trial and concedes on appeal that he is guilty of murdering his four children and his mother-in-law. He contends instead that admission of the prior incidents contributed to the jury verdict that the murders were deliberate and premeditated. We conclude that if any error occurred in admitting the priors, it was harmless.

"Error in admitting evidence of a defendant's prior acts of domestic violence under sections 1109 or 1101 is subject to the standard of prejudice set forth in *People v. Watson* (1956) 46 Cal.2d 818," i.e., " 'it is reasonably probable that a result more favorable to the [defendant] would have been reached in the absence of the error.' " (*Megown, supra,* 28 Cal.App.5th at p. 167.)

" 'An intentional killing is premeditated and deliberate if it occurred as the result of preexisting thought and reflection rather than unconsidered or rash impulse.' " (*People v. Jennings* (2010) 50 Cal.4th 616, 645.) Premeditation and deliberation are shown " 'if the slayer killed "as a result of careful thought and weighing of considerations; as a *deliberate* judgment or plan; carried on cooly and steadily, [especially] according to a *preconceived*

11

*design.*" ' " (*People v. Anderson* (1968) 70 Cal.2d 15, 26.)
Evidence of premeditation and deliberation falls into three basic
categories: planning activity, motive, and manner of killing. (*Id.*
at pp. 26–27.)

The evidence here establishes premeditation and
deliberation, even if the prior incidents had not been admitted.
David purchased a firearm the day before the murders but could
not take delivery due to the waiting period. After hearing
Tyanna speak to another man on the phone on her way to dinner,
he persistently called her to find out who she had been talking to.
He drove to work, remained there for almost two hours, then
decided to leave his shift early. He drove almost an hour to get
home, knowing the children and England would be there and
Tyanna would not be. He had time to consider his actions as he
sat in the driveway for almost five minutes. He had additional
time to deliberate inside the house for six minutes before walking
through the living room and kitchen, systematically shooting
each victim. After the initial eight shots, he paused, further
considered his actions, then shot them nine more times. Having
shot all the cartridges in the handgun, he went to the bedroom,
obtained the shotgun, and a minute and a half later, continued
shooting the victims to make sure they were dead. The evidence
established premeditation and deliberation rather than a " 'rash
impulse.' " (*People v. Jennings*, *supra*, 50 Cal.4th at p. 645.) A
different result is not reasonably probable if the prior acts of
domestic violence had not been admitted.

*Special circumstance*

David contends, and the Attorney General concedes, that
the jury should have found only one multiple-murder special
circumstance rather than five. (Pen. Code, § 190.2, subd. (a)(3);

12

*People v. Mickey* (1991) 54 Cal.3d 612, 678.)  We agree and order four of the special circumstances vacated as duplicative.  However, this does not affect the sentence because the trial court properly applied the special circumstance to impose life without parole for all five murder counts.  (*People v. Garnica* (1994) 29 Cal.App.4th 1558, 1563–1564.)

DISPOSITION

Four of the five special circumstance findings are vacated as duplicative.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.

BALTODANO, J.

We concur:

YEGAN, Acting P. J.

CODY, J.

Denise McLaughlin-Bennett, Judge

Superior Court County of Los Angeles

_____

Jeralyn Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.