Filed 2/19/25  P. v. Anderson CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E081601 |
| v. | (Super.Ct.No. RIF2204714) |
| LEWIS ANDERSON, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Walter H. Kubelun, Judge.  Convictions affirmed, sentence vacated, and remanded with directions.

Stephanie M. Adraktas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Daniel Rodgers and Adrian R. Contreras, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Lewis Anderson challenges his conviction and sentence on several grounds.  We find his stipulations to six aggravating factors were not knowing

and intelligent, so his sentence must be vacated and the case remanded for further proceedings. We either reject or decline to consider as moot his other claims.[1]

## I. BACKGROUND

Shortly before 10 p.m. on September 10, 2022, an assistant manager and a security officer at a homeless shelter in Riverside heard yelling. They stepped outside and saw Jane Doe, a former resident, yell at defendant and appellant Lewis Anderson, who was inside a van. Doe, who was outside the van and standing by the front passenger window, walked around the front of the van toward the driver's side and Anderson. Doe demanded that Anderson return her purse. Doe walked near a wrought iron gate. Anderson turned the van toward Doe and, according to the assistant manager, "looked like he was trying to hit [Doe] and pin her against the gate." Doe jumped out of the way, and the van stopped before hitting the gate.

Anderson got out of the van and argued with Doe for several minutes. A staff supervisor joined the other two employees. Doe walked away from Anderson and the van. According to the assistant manager, Anderson got in the van, made a U-turn, and "punched the gas again" toward Doe, getting "very close" to hitting her a second time with the vehicle. The staff supervisor testified that Anderson "got in the car, pressed on the gas, and turned it around really fast, kind of like aiming it at Jane Doe," forcing her onto the curb.

---

[1] Undesignated statutory references are to the Penal Code. Undesignated rule references are to the California Rules of Court.

Anderson got out of the van again and continued arguing with Doe. Doe began walking away again, and Anderson got back into the van and followed her, revving his engine along the way. Anderson then pulled the van up near Doe and stopped, which forced Doe onto the curb again. Anderson got out of the van and continued arguing with Doe. The employees then saw Anderson strike Doe on the face three times.

The employees separated Anderson and Doe, and the assistant manager called law enforcement. During the call, Anderson can be heard saying, "That's no woman, that's no woman, that's my baby momma." The assistant manager responded, "Okay, but it doesn't give you the right to hit her sir," to which Anderson said, "I got the right to do whatever the [expletive] I want to do." The staff supervisor told Anderson he couldn't beat a woman to get them to submit, to which Anderson responded, "But it's my woman. That's how I deal with it."

Anderson was charged with assault with a deadly weapon (§ 245, subd. (a)(1)), a felony, and battery of an intimate partner (§ 243, subd. (e)(1)), a misdemeanor. The information also alleged one serious felony prior (§ 667, subd. (a)), two strike priors (§§ 667, subds. (b)-(i), 1170.12), and three aggravating factors (rule 4.421 (b)(2), (b)(3), (b)(5)). The trial court bifurcated trial on the priors and aggravating factors from trial on the underlying counts. At the beginning of trial, Anderson agreed to waive a jury trial in favor of a court trial on the priors and aggravating factors.

The jury was told that Anderson was convicted in 2014 of "Penal Code Section 273.5, Subdivision (a), a felony, inflicting injury on a spouse, cohabitant, fellow parent,

3

or someone with whom the defendant previously had a dating relationship that resulted in a traumatic condition." Neither Anderson nor Doe testified at trial.

While the jury was deliberating, Anderson stipulated to an aggravating factor for serving a prior prison term (rule 4.421(b)(3)). After the jury returned guilty verdicts on both counts, Anderson stipulated to the remaining aggravating factors. We discuss Anderson's stipulations of the aggravating factors in greater detail below.

At sentencing, on Anderson's request, the trial court struck one of the strike priors. (See *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).) The trial court elected the upper term of four years for the felony charge, and the term was doubled due to Anderson's remaining strike prior. (§§ 245, subd. (a)(1), 667, subd. (e), 1170.12, subd. (c)(1).)

The trial court elected the upper term after finding true seven aggravating factors, including the prior prison term aggravating factor Anderson stipulated to during the jury's deliberation, two other aggravating factors that were alleged in the information (those under rule 4.421(b)(2) and 4.421(b)(5)), and four others that were not alleged in the information but included in the probation officer's sentencing recommendation (those under rule 4.421(a)(1), 4.421(a)(2), 4.421(a)(3) and 4.421(b)(1)).

Based on the upper term of eight years for the felony assault with a deadly weapon charge, a consecutive five-year term for the serious felony prior, and a consecutive one-year term for the misdemeanor charge, Anderson was sentenced to 14 years in prison.

4

## II. DISCUSSION

Anderson argues the trial court abused its discretion in allowing the jury to consider his prior domestic violence conviction. He also argues the unanimity instruction given to the jury erroneously stated that a single act could form the basis for both charged counts. We reject these arguments.

Anderson then claims his stipulation to six of the seven aggravating factors—all but the prior prison term aggravating factor—was not knowing and intelligent. We agree, as the colloquy did not make clear Anderson knew he was being asked to stipulate to the truth of the aggravating factors. As a result, Anderson's sentence must be vacated and his case remanded for a court trial on these aggravating factors unless Anderson validly stipulates to them.

Finally, Anderson raises two claims that relate to sentencing but not aggravating factors. We decline to reach these issues because Anderson may raise them, if needed, when the trial court resentences him.

### A. *Prior Domestic Violence Conviction*

"Ordinarily, evidence of prior criminal acts is inadmissible to show a defendant's disposition to commit such acts." (*People v. Megown* (2018) 28 Cal.App.5th 157, 163 (*Megown*), citing Evid. Code, § 1101, subd. (a).) Evidence Code section 1109, however, creates an exception for cases involving domestic violence. "In enacting [Evidence Code] section 1109, the Legislature 'considered the difficulties of proof unique to the prosecution of [domestic violence cases] when compared with other crimes where

5

propensity evidence may be probative but has been historically prohibited.'" (*Megown*, *supra*, at p. 164.)

Subject to exceptions not at issue here, "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by [Evidence Code] Section 1101 if the evidence is not inadmissible pursuant to [Evidence Code] Section 352." (Evid. Code, § 1109, subd. (a)(1).) At trial, and relying on Evidence Code section 1109, the prosecution told the jury that Anderson had previously been convicted of willfully inflicting corporal injury resulting in a traumatic condition on a victim who falls into one or more categories of domestic partners. (§ 273.5; see *id.* at subd. (b) [categories include "someone with whom the offender has, or previously had, an engagement or dating relationship"].)

Anderson raises two arguments relating to the introduction of his prior domestic violence conviction into evidence. The first is a threshold issue. Evidence Code section 1109 applies only "in a criminal action in which the defendant is accused of an offense involving domestic violence," and Anderson contends that assault with a deadly weapon cannot be considered such an offense. On that basis, he contends that the prior domestic violence conviction should not have been introduced.

We disagree. Anderson's argument fails because—as Anderson concedes—the other charge brought against him, for battery of an intimate partner (§ 243, subd. (e)(1)), *is* an offense involving domestic violence. Evidence Code section 1109 states that it

6

applies if the "criminal action" includes an offense involving domestic violence, and the term "criminal action" is defined as "[t]he *proceeding* by which a party charged with a public offense is accused and brought to trial and punishment." (§ 683, italics added.) Evidence Code section 1109 can thus apply to the entire action if one or more charges within the action involve domestic violence.

Alternatively, Anderson argues that even if Evidence Code section 1109 applied, the trial court abused its discretion by not excluding the prior domestic violence conviction under Evidence Code section 352. That section states that "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." We find no abuse of discretion here.

"'Evidence is not inadmissible under [Evidence Code] section 352 unless the probative value is "substantially" outweighed by the probability of a "substantial danger" of undue prejudice or other statutory counterweights. Our high court has emphasized the word "substantial" in [Evidence Code] section 352. [Citations.] [¶] Trial courts enjoy "'broad discretion'" in deciding whether the probability of a substantial danger of prejudice substantially outweighs probative value. [Citations.] A trial court's exercise of discretion "will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice."'" (*People v. Mani* (2022) 74 Cal.App.5th 343, 370-

7

371.)  Additionally,  ""'"[t]he 'prejudice' referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against [a] defendant as an individual and which has very little effect on the issues.  In applying [Evidence Code] section 352, 'prejudicial' is not synonymous with 'damaging.'"'""  (*People v. Rucker* (2005) 126 Cal.App.4th 1107, 1119.)  "Relevant factors in determining prejudice include [1] whether the prior acts of domestic violence were more inflammatory than the charged conduct, [2] the possibility the jury might confuse the prior acts with the charged acts, [3] how recent were the prior acts, and [4] whether the defendant had already been convicted and punished for the prior offense(s)."  (*Ibid.*)

Here, the prior domestic violence conviction could not have been seen as more inflammatory than the charged conduct because the jury heard nothing about the facts of the prior incident.  We reject Anderson's argument that the jury was "essentially invited to speculate as to the inflammatory scenarios" as speculative.  The bare fact of conviction also meant that the jury could not have confused the prior domestic violence conviction with the charged acts.  As to remoteness in time, Anderson cites no cases showing what length of time is reasonable or unreasonable, and our own search does not support the notion that eight years is too remote.  (See *People v. Harris* (1998) 60 Cal.App.4th 727, 739 ["Although there is no bright-line rule, 23 years is a long time"]; *People v. Burns* (1987) 189 Cal.App.3d 734, 738 ["a conviction that is 20 years old . . . meets any

reasonable threshold test of remoteness"].)**2** In fact, when the trial court ruled that the jury could hear about the 2014 conviction, it also excluded an even earlier conviction from 2000 as too remote. And finally, the fact that the jury heard Anderson was convicted for the prior conduct reduced the probability that the evidence would cause him undue prejudice. (*People v. Jennings* (2000) 81 Cal.App.4th 1301, 1315 ["knowledge that appellant had . . . been punished for his prior transgressions substantially mitigates the kind of prejudice usually associated with the introduction of prior bad act evidence"].) The trial court was thus well within its discretion to find the probative value of the prior conviction was not substantially outweighed by any undue prejudice.

Anderson contends that, contrary to what the trial court found, the offense for the prior domestic violence conviction was dissimilar to the charges in the current case. He emphasizes that his 2014 crime required a corporal injury—one resulting in a "traumatic condition"—while his current charges do not. (Compare § 273.5, subd. (a) with §§ 243, subd. (e)(1), 245, subd. (a)(1).) Given that one of his current charges (battery of an intimate partner) and his previous conviction (inflicting injury on a domestic partner resulting in a traumatic condition) both involve physically attacking a domestic partner, however, it is immaterial whether a traumatic condition resulted from the acts. This is

---

**2** Moreover, the Legislature considered remoteness when enacting Evidence Code section 1109. Since its enactment, the statute has provided that "[e]vidence of acts occurring more than 10 years before the charged offense" is presumptively inadmissible unless the court determines that admission was "in the interest of justice." (Evid. Code § 1109, subd. (e).)

9

especially so given that even a "minor" physical injury suffices as a traumatic condition. (§ 273.5, subd. (d); see *People v. Reid* (2024) 105 Cal.App.5th 446, 457 ["The harm to the victim required to satisfy the 'traumatic condition' element of section 273.5[] is a lesser degree of harm than what is required under other criminal statutes"].)

Finally, Anderson observes that domestic violence can be perpetuated against any relative, not necessarily an intimate partner, so he claims there is an insufficient basis to conclude the prior conviction was sufficiently similar to his actions toward Doe. However, the 2014 crime applied only to violence against intimate partners. As it read in 2014, section 273.5 applies only "if the victim is or was one or more of the following: [¶] (1) The offender's spouse or former spouse. [¶] (2) The offender's cohabitant or former cohabitant. [¶] (3) The offender's fiancé or fiancée, or someone with whom the offender has, or previously had, an engagement or dating relationship, as defined in paragraph (10) of subdivision (f) of Section 243. [¶] (4) The mother or father of the offender's child." (former § 273.5, subd. (b); see also *People v. Holifield* (1988) 205 Cal.App.3d 993, 1000 ["'cohabiting' under section 273.5 means an unrelated man and woman living together in a substantial relationship—one manifested, minimally, by permanence and sexual or amorous intimacy"].) We therefore conclude the trial court did not err in allowing the jury to hear about Anderson's prior domestic violence conviction.[3]

---

[3] Anderson contends that admission of the prior domestic violence conviction also violated his right to due process. The contention is based on the same arguments he raised under Evidence Code section 1109, and we reject it for the same reasons as stated above.

10

B. *Unanimity Instruction*

The prosecution's trial evidence suggested Anderson may have committed several criminal acts, but he was charged with only one count of assault with a deadly weapon and one count of battery of an intimate partner. "[W]hen the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act." (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) The prosecution did not elect among the crimes, so the trial court instructed the jury what it must agree on. Anderson argues that the instruction, modified from CALCRIM No. 3500, impermissibly allowed the jury to have a single act form the basis of both charges. We find no error.

"'If a jury instruction is ambiguous, we inquire whether there is a reasonable likelihood that the jury misunderstood and misapplied the instruction.' [Citations.] ""'[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction."'" [Citations.] The reviewing court also must consider the arguments of counsel in assessing the probable impact of the instruction on the jury." (*People v. Young* (2005) 34 Cal.4th 1149, 1202.) "'[A]ny theoretical possibility of confusion [may be] diminished by the parties' closing arguments.'" (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1220, abrogated on another ground by *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.) We review the claim of instructional error de novo. (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.)

11

The trial court gave the following written instruction for unanimity: "The defendant is charged in Count 1—assault with a deadly weapon, and Count 2—battery against a person with whom the defendant currently has, or previously had, a dating relationship, or the mother of his child, sometime during the period of September 10th, 2022. [¶] The People have presented evidence of more than one act to prove that the defendant committed this offense. You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed."

Anderson focuses on the instruction listing two counts before referring to "this offense."[4] On his view, the instruction did not clearly tell the jury the People had to prove at least one act for each offense, so there was a reasonable likelihood the jury believed a single act could form the basis for both charges. However, Anderson views the instruction in isolation. When the instruction is read in context with closing argument, we see no reasonable likelihood that the jury would have misunderstood it in the way Anderson describes.

In recounting trial testimony during closing argument, the People referred to only Anderson's attempts to hit Doe with the van as an assault and to only Anderson's

---

[4] The trial court's oral instructions to the jury stated "these offenses" instead of "this offense." However, "[t]he written version of jury instructions governs any conflict with oral instructions." (*People v. Rodriguez* (2000) 77 Cal.App.4th 1101, 1113.) We therefore focus only on the written instructions, which stated that "[t]he People have presented evidence of more than one act to prove that the defendant committed this offense."

12

punches as battery. After describing the initial events, the prosecutor said, "[s]o this is the first assault with the car that the defendant took." He then described Anderson's second attempt to hit Doe with the van: "Then we get to the second assault. Immediately thereafter, after Jane Doe jumped out of the way, Jane Doe starts running away eastbound on Massachusetts. And what does the defendant do? He immediately makes that U-turn with his car and starts driving straight towards her."

When the prosecutor described Anderson's punches to Doe's face, he called them battery and not assault: "[The assistant manager] told us about how Jane Doe's face would move back after each swing. [He] told us about those thugs [sic] he heard each time the defendant made contact with her face. [The staff supervisor] told us about how he heard Jane Doe screech after each punch to the face. [¶] Now, there's no visible injury. And, ladies and gentlemen of the jury, law enforcement arrived immediately after the scene. They took photos. You're going to have those exhibits back there. But when you see those exhibits, Jane Doe has a very dark complexion. Injuries aren't going to show up that quickly. So we don't have injuries to follow up from the day after, but the charges in this case is simple battery, domestic violence. The defendant is not charged with causing an injury, simply that he caused a harmful or offensive contact, and we'll talk about that in a little more detail in a bit."

Later, when discussing the van again, the prosecutor went back to the term "assault": "So at this point [the staff supervisor] had observed what was going on. He saw that screeching and the roaring of the engine and saw that second assault. He then

13

told us about the argument that ensued for a little bit, followed by the third assault with the car."

Still later during closing argument, the prosecutor made clear that the assault charge related to the attempted vehicular strikes because Anderson tried but failed to hit Doe: "So what does an assault mean?  It basically means an attempt to hit someone.  [¶] So in sports there's baseball.  Basically, someone takes a swing and a miss.  That's what an assault is.  Someone tried to make contact, but they missed.  And in this case, the defendant tried to hit Jane Doe three times with his car, but each time he missed because Jane Doe jumped out of the way to avoid being hit."

Then, when explaining the elements of the battery charge to the jury, the prosecutor stated:  "So what's the proof in this case?  He willfully touched Jane Doe in a harmful or offensive manner.  Again, from the testimony of the three witnesses yesterday, without question they saw what they saw.  That was the defendant hitting Jane Doe in the face."

Finally, during rebuttal argument, the prosecutor again linked the assault charge to Anderson's actions with the van:  "[Anderson] did in fact follow [Doe] at points slowly going about five miles per hour, but I asked each of the witnesses about the differences between following her and trying to assault her with his van, and they told us that driving was much different."

Anderson's closing argument also distinguished between the assault charge based on trying to hit Doe with the van and the battery charge based on punches.  When arguing

14

for acquittal on the assault with a deadly weapon charge (and effectively conceding guilt on the battery charge), Anderson's counsel stated: "Mr. Anderson was just trying to get [Doe] in the car, if you believe that's true, then you can't find him guilty in this case of assault with a deadly weapon. [¶] Now, the battery on the spouse, that's a totally different charge. You've got to examine these two charges different [*sic*]. Just because Mr. Anderson may have hit his girlfriend, don't hold that against him, and, you know, he's a horrible person, I want to hammer this guy."

Thus, when the written unanimity instruction is read along with the parties' closing arguments, we see no reasonable likelihood that the jury would have thought any single act could have formed the basis for both the assault with a deadly weapon charge, which both sides discussed in context with the van, and the charge for battery of an intimate partner, which both sides discussed in context with the face punches. We accordingly find no instructional error.

C. *Stipulation to Aggravating Factors*

Anderson argues his stipulation to six aggravating factors was ineffective because it was not knowing or intelligent. We find that the contention has merit.

*1. Additional Background*

The first amended information alleged three aggravating factors: Anderson's prior convictions were numerous or of increasing seriousness (rule 4.421(b)(2)), he had served a prior prison term or county jail (rule 4.421(b)(3)), and his prior performance on probation or parole was unsatisfactory (rule 4.421(b)(5)). Anderson moved to bifurcate

15

trial so that the jury would determine Anderson's guilt on the charged offenses before any trial on the alleged aggravating factors (as well as alleged priors) commenced. Granting the unopposed motion, the court stated: "Mr. Anderson, now that that is bifurcated, you have to have a discussion with your attorney on whether you want the jury to hear all those factors and those charges against you after they decide on the current charges, or if you're willing to stipulate to those, or if you want the People to prove it simply by the certified prior packets, or have this Court decide those factors upon presentation of evidence."

### a. Jury Trial Waiver

Before opening arguments began, outside the jury's presence, the trial court stated: "We had a brief chambers conference on the remaining issue of the bifurcated priors. [¶] Mr. Anderson, it's my understanding that you are allowing or want a court trial on your prior and aggravating factors; is that correct?" Anderson replied yes, and the court asked to confirm whether he wanted to waive a jury trial for that process, to which Anderson also replied yes. The court then stated: "I will make a determination, then, should you be convicted. It only becomes relevant should you be convicted. We'll have that trial."

### b. Stipulation on Prior Prison Term Aggravating Factor

While the jury was deliberating, Anderson agreed to stipulate that he had a prior conviction for which he spent time in prison:

"THE COURT: We'll go back on the record in People versus Anderson, RIF2204714. Both counsel are present. Mr. Anderson is present. Jurors and alternates

16

have left, and the jury is deliberating. [¶] We now have the issue of the prison priors. I've been handed the certified packet from the People. I've reviewed that packet. I've had an opportunity to speak with Mr. Anderson with the presence of his counsel, and indicated that the only thing that we're asking him to do is stipulate that he does have these priors from 2000, as set forth in the packet, that he is not admitting guilt from that time, that these were convictions by a jury, and that he actually spent time in prison for those convictions. If he does that, then those will be considered by the Court and probation and looking towards getting a probation report and sentencing, but if, and only if, this jury comes back as guilty. If not, the stipulation will be known, but it will not be used in any way, shape, or form, only if there's a guilty verdict. [¶] So, Mr. Anderson, with that said, it appears that in – the note was in 2000. It says, 'Date of sentence pronounced.' On October 20th, 2000, it appears that you were sentenced to prison on these priors. I have the packet here, which is dated October 12, 2022, and that was for mayhem and 245(a)(1). [¶] Is that correct?

"DEFENDANT ANDERSON: Yes, sir.

"THE COURT: And do you stipulate to those convictions?

"DEFENDANT ANDERSON: Yes, sir.

"THE COURT: And counsel join?

"[DEFENSE COUNSEL]: I join, Your Honor.

"THE COURT: And, People, any comments?

"[PROSECUTOR]: No.

17

"THE COURT: So I do find those priors stipulated to. And the Court has indicated, and will indicate again, that those will only be used in determining the Court's sentencing. The Court will allow all parties to file motions and briefs to discuss sentencing, but if, and only if, the jury returns a verdict of guilty."

The trial court then asked Anderson if he had any questions, and Anderson appeared to ask whether one of his prior convictions was in fact a crime: "From my understanding, the 245(a)(1) did not have room for a crime, because it's an element of the offense and it can't be a crime, from my understanding." The court responded: "Well, what's going to happen is any issue like that – like I said, the only reason we did this is only if the jury comes back with a guilty verdict. If there's any technical issues or legal issues, your attorney will be able to file a motion regarding that." After some more discussion about *Romero* motions, the court stated: "All right. I think we got it. [¶] We still have the factors in aggravation. One of them was, obviously, the priors, but that's it. But you have two others, but I think we can discuss that if, and only if, the jury returns a guilty verdict."

### c. Stipulation on Other Aggravating Factors and Sentencing

Once the jury had rendered its verdict and been discharged, the parties and the trial court engaged in the following colloquy, in which the court asked Anderson to stipulate to the remaining aggravating factors, Anderson asked what that meant, and the court offered an explanation:

18

"THE COURT: All right. The jury has spoken in this case, and so we do have to do a couple of housekeeping matters. [¶] We do need to set a sentencing date. I'm agreeable as long as the defendant is willing to waive time to whatever date. I do them on Fridays, so any Friday is agreeable. The 24th I already have three, so March 24th would not be it. [¶] I believe the People have also alleged two other aggravating factors.[5] [¶] So, [defense counsel], we need to speak about those. If your client is willing to stipulate that those can be considered at sentencing, I'll simply just consider that, and then everyone can argue them. If you want to handle it some other way, I'm more than happy to do that. It's really your pleasure on how you want to go about that.

"[DEFENSE COUNSEL]: Sentencing would be fine, Your Honor.

"THE COURT: So, Mr. Anderson, the People alleged two – here's the way I sentence. I consider factors in mitigation and aggravating factors, okay? [¶] For example, there could be something, the remoteness of time of the prior convictions, that would be a factor in mitigation, so to speak, or something else. There's a bunch of them. And so what I'd like to do is get you to stipulate to argue all of those at sentencing. People will say all their factors in aggravation. Defense will say all their factors in

---

[5] The two aggravating factors were that the defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness (rule 4.421(b)(2)) and that the defendant's prior performance on probation, mandatory supervision, postrelease community supervision, or parole was unsatisfactory (rule 4.421(b)(5)).

mitigation.  I'll look at them all, and then I'll make my decision.  [¶]  So, are you okay with that?

"DEFENDANT ANDERSON:  I'm cool with it.

"THE COURT:  Okay.  So you'll stipulate that I can consider the factors in aggravation as well as the factors in mitigation?

"DEFENDANT ANDERSON:  I don't understand that question.

"THE COURT:  So, can I consider everything at the time of sentencing?

"DEFENDANT ANDERSON:  Yes, sir.

"THE COURT:  So that's basically what I'm asking.

"DEFENDANT ANDERSON:  Yes, sir.

"THE COURT:  So the People are going to say, well, he has a prison prior, which the jury heard.  I should consider that as a factor in aggravation.  In other words, therefore, you should get more time.  [¶]  And then your defense is going to come and say, well, yeah, but that was like super old, so you shouldn't consider it, right?  So all of those can be argued at sentencing.  And so rather than go through them all now, we'll go through them at the time of sentencing and let everyone brief them.  [¶]  So you're okay with that?

"DEFENDANT ANDERSON:  Yes, sir.

"THE COURT:  And, Counsel, you join?

"[DEFENSE COUNSEL]:  I join.

"THE COURT:  So you join the stipulation.  People, any comments on that?

"[PROSECUTOR]: Yes. [¶] Just to verify, because the – I know we preceded bench trial on the aggravating factors. Does the Court need to make a finding of the two aggravating factors in this case?

"THE COURT: Well, I'm going to save that for sentencing.

"[PROSECUTOR]: Okay.

"THE COURT: So what I'm going to do is I'm going to allow probation to consider them and put them in the report, and then I will make my decision whether the Court considers those or uses those in his sentencing.

"[PROSECUTOR]: Okay."

At sentencing, the trial court found seven aggravating factors true, including the prior prison term aggravating factor Anderson stipulated to during the jury's deliberation, two other aggravating factors that were alleged in the information (those under rule 4.421(b)(2) and 4.421(b)(5)), and four others that were not alleged in the information but included in the probation officer's sentencing recommendation (those under rule 4.421(a)(1), 4.421(a)(2), 4.421(a)(3) and 4.421(b)(1)).

*2. Applicable Law and Analysis*

"In [*Boykin v. Alabama* (1969) 395 U.S. 238 (*Boykin*),] the United Stated Supreme Court held that it could not be presumed from a silent record that a guilty plea was voluntarily made with the necessary concomitant, knowing and intelligent waiver of constitutional rights which were forfeited by a plea of guilty. [Citations.] This emphasis on the necessity of an affirmative showing of waiver was grounded on the recognition

21

that a guilty plea, '. . . is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment.'" (*In re Yurko* (1974) 10 Cal.3d 857, 861 (*Yurko*).)

In *In re Tahl* (1969) 1 Cal.3d 122 (*Tahl*), the California Supreme Court "construed *Boykin* to require more than an *inferential* showing from the record that an accused waived his constitutional rights to confront accusers, to trial by jury, and against compulsory self-incrimination." (*Yurko*, *supra*, 10 Cal.3d at p. 861, second italics added.) *Tahl* held that "the court itself must 'specifically and expressly' enumerate each of the rights, 'employ the time necessary to explain adequately and to obtain express waiver of the rights involved' prior to acceptance of a guilty plea, and ensure that an adequate record be available for possible review." (*Yurko*, *supra*, at p. 861, citing *Tahl*, *supra*, at p. 132.)

"The prophylactic *Boykin-Tahl* requirements are not limited to pleas of guilty." (*People v. Adams* (1993) 6 Cal.4th 570, 576 (*Adams*).) "A defendant's agreement to submit the case on the record of the preliminary hearing in circumstances tantamount to a plea of guilty is also subject to those requirements [citations] as is an admission of an allegation made in the information or indictment for the purpose of increasing the punishment otherwise applicable to the offense." (*Ibid.*; see *Yurko*, *supra*, 10 Cal.3d at p. 863 ["*Boykin* and *Tahl* require, before a court accepts an accused's admission that he has suffered prior felony convictions, express and specific admonitions as to the constitutional rights waived by an admission"].) As relevant here, if a stipulation admits

"every fact necessary" to impose additional punishment, such as an aggravating factor, *Boykin-Tahl* advisements are required. (*Adams*, *supra*, at p. 580; see § 1170, subd. (b)(2) ["The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial"].) "A stipulation may establish every fact necessary to support an increased punishment even if the trial court decides not to impose that punishment." (*People v. Cross* (2015) 61 Cal.4th 164, 175.)

"[E]rror[s] involving *Boykin*/*Tahl* admonitions should be reviewed under the test used to determine the validity of guilty pleas under the federal Constitution." (*People v. Howard* (1992) 1 Cal.4th 1132, 1175.) "Under that test, a plea is valid if the record affirmatively shows that it is voluntary and intelligent under the totality of the circumstances." (*Ibid.*) "[I]f the transcript does not reveal complete advisements and waivers, the reviewing court must examine the record of 'the entire proceeding' to assess" whether an admission subject to *Boykin*/*Tahl* was intelligent and voluntary in light of the totality of circumstances. (*People v. Mosby* (2004) 33 Cal.4th 353, 361 (*Mosby*).) In making such an assessment, the focus is on whether the admission or waiver was "given with an understanding of the rights waived." (*Ibid.*)

In the section of his opening brief addressing the issue, Anderson describes only the colloquy that took place after the jury had been discharged—that is, the colloquy

23

concerning only Anderson's stipulation of the remaining aggravating factors. Prior to that point, Anderson had both waived jury trial on the aggravating factors in favor of a court trial and stipulated to the prior prison term aggravating factor under rule 4.421(b)(3). Anderson's opening brief mentions the prior prison term stipulation only in passing in his "Statement of the Case" section, and he never mentions waiver of jury trial in favor of court trial at all.

Accordingly, we construe Anderson's argument here as encompassing only the stipulation to the six aggravating factors that took place after the jury had been discharged. To the extent Anderson seeks relief based on his prior prison term stipulation or jury trial waiver, the issue has been forfeited. (*Golden Door Properties, LLC v. Superior Court of San Diego County* (2020) 53 Cal.App.5th 733, 786 ["issues not addressed as error in a party's opening brief with legal analysis and citation to authority are forfeited"].)

Anderson argues that his stipulation to the six aggravating factors was not knowing or intelligent. We agree. From the colloquy, it was not clear that Anderson understood he was stipulating to the truth of those aggravating factors at all. The trial court first asked Anderson to agree to allow the trial court to "consider" aggravating factors: "If your client is willing to stipulate that those [aggravating factors] can be considered at sentencing, I'll simply just consider that, and then everyone can argue them." It then framed the issue as having Anderson stipulate to "arguing" them: "And so what I'd like to do is get you to stipulate to argue all of those at sentencing."

24

When Anderson said he did not understand, the trial court asked again whether it could "consider everything": "So, can I consider everything at the time of sentencing?" It then said it would allow the parties to "brief" the issue of aggravating factors: "So all of those can be argued at sentencing. And so rather than go through them all now, we'll go through them at the time of sentencing and let everyone brief them."

At no time up through this point did the trial court ever make clear that it was asking Anderson to stipulate that the aggravating factors were true. To the contrary, it suggested that stipulating to the factors was the way for Anderson to dispute them, as that would be how the parties could "brief" the issue and have the trial court "consider everything."

What happened next did not help matters. After Anderson and his counsel agreed to the stipulation, the prosecutor asked the court for clarification: "Does the Court need to make a finding of the two aggravating factors in this case?" The trial court responded: "Well, I'm going to save that for sentencing." It thus specifically reserved on making a finding on at least some of the factors.

The colloquy was unlike when, during jury deliberations, the trial court asked Anderson to stipulate to the prior prison term aggravating factor. There, the trial court made it clear it was asking Anderson to stipulate to the truth of the aggravating factor: "On October 20th, 2000, it appears that you were sentenced to prison on these priors. I have the packet here, which is dated October 12, 2022, and that was for mayhem and 245(a)(1). [¶] Is that correct?" It is also unlike colloquies in cases where a stipulation or

waiver has been upheld. In *Mosby*, after the defendant was convicted in a jury trial, he waived trial on a prior conviction and later challenged the waiver as not intelligent and knowing. (*Mosby*, *supra*, 33 Cal.4th at pp. 356-359.) Our Supreme Court held that the waiver was valid even though the defendant did not expressly waive his right to remain silent or confront adverse witnesses because, among other considerations, "defendant, who was represented by counsel, had *just* undergone a jury trial at which he did not testify." (*Id.* at p. 364.) Here, the People rely heavily on *Mosby*, noting that this case also involves a waiver of trial on additional facts after conclusion of a jury trial. But in *Mosby*, the trial court expressly informed the defendant that the waiver meant the court could determine the *truth* of the prior conviction. (*Id.* at p. 358 ["'The Court: Mr. Mosby . . . you already waived having the jury determine the truth of this prior felony conviction of yours that's alleged. You are . . . entitled to have the court hear the matter, as well, to make a determination. [¶] 'Do you understand that? [¶] . . . [¶] Do you waive and give up your right to have the court make the determination?'"].) As noted, the trial court made no such statement here.

Other parts of the record also suggest the stipulations were not knowing and intelligent. In none of the instances involving jury waiver or aggravating factor stipulations does the record show that Anderson initiated the request. (See *People v. Sivongxxay* (2017) 3 Cal.5th 151, 167 [upholding jury waiver in part because the "defense initiated the request for a court trial"] (*Sivongxxay*); *People v. Daniels* (2017) 3 Cal.5th 961, 993 (conc. & dis. opn. of Cuéllar, J.) ("He did not ask about waiving a jury.

26

In fact, it was the judge who broached the issue."].) Specifically as to the six stipulations, the trial court broached the possibility of stipulation before offering the alternative of "handl[ing] it some other way." The lack of initiation further suggests Anderson did not understand what he was being asked to do.

The People note Anderson's "substantial experience and familiarity with a criminal jury trial" based on his prior convictions. Experience with the criminal justice system is no doubt a relevant factor. (See *Sivongxxay*, *supra*, 3 Cal.5th at p. 167; *Parke v. Raley* (1992) 506 U.S. 20, 37 ["evidence of a defendant's prior experience with the criminal justice system" is "relevant to the question whether [a defendant] knowingly waived constitutional rights"].) But also relevant is that, prior to 2022, aggravating factors were not facts that needed to be found beyond a reasonable doubt by a jury unless waived.[6] Whatever experience Anderson had with criminal trials in general, that

---

[6] Prior to 2007, the determinate sentencing law required that "when a statute specified three terms, 'the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime.'" (*People v. Lynch* (2024) 16 Cal.5th 730, 746 (*Lynch*), citing former § 1170, subd. (b).) The law "reflected a presumption in favor of the middle term," and aggravating and mitigating circumstances "had to be proved by a preponderance of the evidence." (*Lynch*, *supra*, at p. 746.) "Under that scheme the trial court, not the jury, determined the facts bearing on aggravation or mitigation employing the lower standard of proof." (*Ibid.*) However, "[i]n 2007, the United States Supreme Court found this sentencing scheme unconstitutional on the ground that 'under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence.'" (*Chavez Zepeda v. Superior Court* (2023) 97 Cal.App.5th 65, 74 (*Chavez Zepeda*), citing *Cunningham v. California* (2007) 549 U.S. 270, 281 (*Cunningham*).) In response, the Legislature amended the determinate sentencing law "to give 'trial judges broad

experience did not extend to ones where the jury trial right extended to aggravating factors.

Between the trial court's confusing comments getting Anderson to stipulate to "considering" or "arguing" the aggravating factors, its disclaimer to the prosecutor that it was not going to make a finding on some of the factors until sentencing, the lack of any statement that it was asking Anderson to stipulate to the truth of the factors, the absence of any initiative on Anderson's part to stipulate, and his lack of experience with criminal trials where aggravating factors must be found beyond a reasonable doubt, we conclude that Anderson's stipulation was not knowing and intelligent. Waivers in this context are

---

discretion in selecting a term within a statutory range, thereby eliminating the requirement of a judge-found factual finding to impose an upper term.'" (*Chavez Zepeda*, *supra*, at p. 74.) Under the determinate sentencing law post-*Cunningham*, the middle term was "'no longer the presumptive term absent aggravating or mitigating facts found by the trial judge,'" and the trial judge had "'discretion to impose an upper, middle or lower term'" based on the "'"best . . . interests of justice."'" (*Chavez Zepeda* at p. 74.) Aggravating factors went from facts having to be found by a preponderance of the evidence to sentencing factors merely "considered by trial courts in exercising their discretion." (*People v. Black* (2007) 41 Cal.4th 799, 813, superseded by statute on other grounds as stated in *Lynch*, *supra*, 16 Cal.5th at p. 757; *Apprendi v. New Jersey* (2000) 530 U.S. 466, 494, fn. 19 ["the term 'sentencing factor'" "describes a circumstance, which may be either aggravating or mitigating in character, that supports a specific sentence within the range authorized by the jury's finding that the defendant is guilty of a particular offense"], italics omitted.)

Following amendments to the determinate sentencing law effective January 1, 2022, aggravating factors are no longer facts to be found by a preponderance of the evidence or sentencing factors considered in the exercise of judicial discretion. As it now stands, aggravating factors must "have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2); Stats. 2021, ch. 695, § 5.) The 2022 amendments reflect the fact that an aggravating factor "exposes a defendant to a greater potential sentence." (*Cunningham*, *supra*, 549 U.S. at p. 281.)

28

knowing and intelligent if they are "given with an understanding of the rights waived." (*Mosby*, *supra*, 33 Cal.4th at p. 361.) But we cannot say a defendant understands what rights he is waiving if we cannot be confident he understands what the court asks of him to begin with. We therefore vacate Anderson's sentence and remand for a court trial on the six aggravating factors unless Anderson validly stipulates to them.[7]

D. *Remaining Sentencing Claims*

Anderson's remaining claims concern other aspects of his sentencing. He argues the trial court engaged in "dual use" of facts by finding true aggravating factors that were also elements of the assault with a deadly weapon charge. (See rule 4.420(h) ["A fact that is an element of the crime on which punishment is being imposed may not be used to impose a particular term"].) Anderson also argues the sentence on his misdemeanor charge should have been stayed under section 654 because both crimes were part of a single course of conduct. (See § 654, subd. (a) ["An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision"]; *People v. Fuentes* (2022) 78 Cal.App.5th 670, 680 [§ 654 "applies not only to a single act violating multiple code provisions, but also to an indivisible ""'course of conduct'"" violating several statutes"].) However, because we are vacating Anderson's

---

[7] We decline to address as forfeited Anderson's claim, made for the first time in his reply brief, that he did not receive "due process notice" of the four unalleged aggravating factors. (See *Golden Door Properties, LLC v. Superior Court of San Diego County*, *supra*, 53 Cal.App.5th at p. 786.)

sentence, any other purported errors stemming from it are now moot. We therefore decline to address these arguments, and Anderson may raise them, as necessary, when he is resentenced.[8]

## III. DISPOSITION

The convictions are affirmed, the sentence is vacated, and the matter is remanded. If the People elect to proceed on aggravating factors other than the one alleged under rule 4.421(b)(3), the court shall conduct a trial unless Anderson validly stipulates to the aggravating factors. Otherwise, the trial court shall resentence Anderson.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL          
J.

We concur:

CODRINGTON          
          Acting P. J.

MENETREZ          
          J.

---

[8] For the same reason, we decline to address the People's argument that the abstract of judgment and minute order erroneously reflect a shorter sentence than is reflected in the trial court's oral pronouncement of judgment.