Filed 4/27/26  P. v. Xiong CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>YENG XIONG,<br><br>    Defendant and Appellant. | F088598<br><br>(Super. Ct. No. F24902530)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Arlan L. Harrell, Judge.

Tonja R. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Amanda D. Cary and Ian P. Whitney, Deputy Attorneys General, for Defendant and Respondent.

-ooOoo-

A jury convicted defendant Yeng Xiong of sexual crimes involving two children. On appeal, defendant argues that the trial court erred by admitting expert witness testimony on child sexual abuse accommodation syndrome (CSAAS) regarding the behavior that children who have been sexually abused sometimes exhibit. The People disagree. We affirm the judgment of conviction but direct the court to issue a corrected abstract of judgment.

## PROCEDURAL SUMMARY

On May 13, 2024, the District Attorney for Fresno County filed an information charging defendant with oral copulation or sexual penetration of S., a child 10 years of age or younger (Pen. Code, § 288.7, subd. (b), count 1), lewd and lascivious acts upon S., a child under the age of 14 years (*id*., § 288, subd. (a), count 2), continuous sexual abuse of S., a child under the age of 14 years (*id*., § 288.5, subd. (a), count 3), sexual intercourse or sodomy of H., a child 10 years of age or younger (*id*., § 288.7, subd. (a), count 4), and lewd and lascivious acts upon H., a child under the age of 14 years (*id*., § 288, subd. (a), count 5). (Undesignated statutory references are to the Penal Code.) In addition, the information included special allegations with respect to counts 2, 3, and 5 based on the victims being under the age of 14 and the presence of multiple victims.

On August 1, 2024, the jury returned verdicts finding defendant guilty on all five counts. With respect to counts 2, 3, and 5, the jury found true the special allegations that defendant committed two or more sex offenses against more than one victim.

On August 29, 2024, the trial court sentenced defendant to an aggregate term of 90 years to life, consisting of consecutive sentences of 25 years to life for each of counts 4, 5, and 2, and 15 years to life for count 1. An additional sentence of 25 years to life for count 3 was also imposed and stayed pursuant to section 654.

Defendant filed a notice of appeal on September 3, 2024. On September 4, 2024, the trial court issued an abstract of judgment listing the sentences imposed for counts 1, 2, 4, and 5, and indicating that the sentence for count 3 was stayed. The abstract stated

2.

that defendant was sentenced to life without the possibility of parole on counts 1 through 5.

## FACTUAL SUMMARY

Because the trial evidence has limited relevance to the issues on appeal, a "traditional statement of facts" is unnecessary. (*People v. White* (1997) 55 Cal.App.4th 914, 916, fn. 2.) An abbreviated summary also serves to protect the privacy interests of the victims and their families. (See Cal. Rules of Court, rule 8.90(b)(4), (10).)

*The Sexual Abuse*

Counts 1, 2, and 3 related to allegations of abuse perpetrated by defendant against S. Evidence was introduced at trial that defendant kissed S. on the lips when she was 6 years old. He also asked S. to touch and stroke his "dick," which she did. S. also put her mouth on defendant's penis and moved her mouth in an up and down motion. Sometimes when she touched defendant's penis with her hand or mouth, "white stuff" came out of his penis. Defendant also touched S.'s "private part" and grabbed her "boobs." S. also testified that on one occasion, defendant put two of his fingers inside of her vagina.

S. first disclosed the abuse to staff employed at her school when she was 13 years old. She said that she came forward because she was older and felt like the abuse was wrong, and it made her feel irritated and agitated. She was nervous when she spoke to an on-campus police officer and did not seem to want to provide him with information. Her mother and father testified that they were unaware of the abuse up to that point.

During her trial testimony, S. had difficulty remembering details of the abuse that she had previously described in interviews with staff at her school and police officers. There were also inconsistencies between the testimony she gave at trial and her descriptions of the abuse in previous interviews and testimony.

Counts 4 and 5 concerned allegations of abuse perpetrated by defendant against H. H. was in preschool when the abuse occurred. Defendant kissed her lips, touched her

3.

"private part" (which is where she urinates from) with his fingers, and inserted his fingers inside of her private part. Defendant also used his "private part" (which is where a boy urinates from) to touch her private part and put it inside of her private part. She thought this happened four or five times.

Like S., H. had difficulty when she testified at trial remembering some of the details of the abuse.

*The CSAAS Evidence*

Dr. Jason Christopherson testified as an expert on CSAAS. He did not know S. or H. or the facts of the case.

Christopherson explained that CSAAS describes five primary behaviors exhibited by some children who are known to have been sexually abused: (1) secrecy, (2) helplessness, (3) entrapment or accommodation, (4) delayed or unconvincing disclosure, and (5) retractive disclosure. CSAAS is not used to prove or disprove that a child has been abused. CSAAS was first described in the 1980s and 1990s and was intended to help the public understand why children may react to sexual abuse in ways that might be counterintuitive.

Abused children may keep the abuse a secret because they are often uncomfortable with the fact that they have experienced abuse and are reticent to discuss it. Christopherson explained that it is not uncommon for children to keep the fact of the abuse secret for long periods of time—months or many years—due to their embarrassment or fear that revealing the abuse will result in something bad happening to them.

Helplessness results from children perceiving a mix of positive and negative qualities in the interactions they have with their abusers. Positive qualities can include receiving special attention from their abuser, while negative qualities include the sexual abuse itself. Children who have been abused can struggle to reconcile their conflicted feelings about these positive and negative qualities. This can manifest as a feeling of

helplessness, as the child may not know how to resolve the conflict. When the abuser is a household member, the sense of helplessness can be compounded.

Entrapment and accommodation refer to the coping behaviors a child develops in response to ongoing abuse—adaptations through which the child's mind attempts to protect itself. This accommodation can take various forms. The child may dissociate and "mentally go somewhere else" during the abuse as the brain tries to protect itself from the trauma caused by the abuse, resulting in the brain not processing what is occurring in the moment. As a result, abused children are sometimes unable to remember details of the abuse or will mix up details from different experiences. The child's impaired memory then has the effect of entrapping them in that relationship of abuse in a way that accommodates its continuance.

With respect to delayed or unconvincing disclosure, Christopherson testified that child abuse victims will sometimes disclose their abuse in unique or unpredictable ways that can include disclosing different aspects of the abuse to different people and failing to remember details of the abuse. This can make the child seem unconvincing to the person(s) receiving the disclosure because sometimes the information provided by the child may not follow a logical train of thought. Sometimes unconvincing disclosure manifests itself in a child responding to questions about the abuse by saying, "I don't know" or "I don't remember."

Christopherson also explained that a child's memory works differently than that of an adult. While an adult's memory tends to work in a logical and sequential manner, a child's memory tends to group things by how similar they are, or whether they occurred in a similar timeframe or not. Children also tend to exhibit a tendency to omit events because their memories hold onto things that they think are important.

Lastly, some children will retract or recant prior disclosures of abuse. A child will sometimes do this because when the abuse is disclosed, it leads to other people asking many questions about the abuse, which the child does not want to discuss. In response,

the child may recant their disclosure of abuse in an effort to "go back to normal" before the abuse was disclosed.

On cross-examination, Christopherson testified that CSAAS is not a diagnosis or a predictive model that can be used to determine whether a child is telling the truth about the abuse they have alleged. In his experience, children who have been abused may exhibit none, some, or all of the behaviors that comprise CSAAS. With respect to the timing of disclosures, Christopherson agreed that some children do not delay disclosure while others do. Christopherson also agreed that while some children disclose their abuse in pieces to different people, other children are consistent in the details they disclose to each person.

## **DISCUSSION**

Defendant raises two primary arguments on appeal. First, he contends the trial court abused its discretion by admitting the testimony of Dr. Christopherson regarding CSAAS because such testimony is (i) by its very nature unreliable and lacks probative value, (ii) not sufficiently beyond common experience to be of assistance to the jury; and (iii) substantially more prejudicial than probative. He argues the court's erroneous admission of CSAAS evidence prejudiced him so severely that his federal constitutional rights were violated and his conviction must be overturned.

Second, defendant argues the trial court erred by instructing the jury regarding the CSAAS evidence using pattern jury instruction titled California Criminal Jury Instruction (CALCRIM) No. 1193 because that instruction improperly permits the jury to rely on CSAAS testimony as evidence the victims were telling the truth when they described the abuse they suffered.

We disagree as we explain below.

## I. General Legal Principles Applicable to Expert Testimony and CSAAS Evidence.

A brief review of the law regarding the admission of expert witness testimony and CSAAS evidence provides a helpful foundation for our analysis of the issues raised by defendant on appeal.

### A. Expert testimony.

Expert testimony is admissible when it is "(a) [r]elated to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact; and (b) [b]ased on matter … known to the witness … that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates .…" (Evid. Code, § 801.) " '[T]he decisive consideration in determining the admissibility of expert opinion evidence is whether the subject of inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness or whether, on the other hand, the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.' " (1 Witkin, Cal. Evid. (6th ed. 2025), Opinion Evidence, § 28 [citing *People v. Cole* (1956) 47 Cal.2d 99, 103].) The jury need not be entirely ignorant of the subject matter in question for expert evidence to be admissible; instead, if the evidence would assist the jury, it will be excluded "only when it would add nothing at all to the jury's common fund of information." (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1299–1300 (*McAlpin*).)

### B. CSAAS Evidence.

Expert testimony on CSAAS has been admissible in California for the limited purposes of dispelling commonly held misconceptions about a child's reaction to sexual abuse and to aid the jury in "evaluating the credibility of an alleged child victim of sexual abuse." (*People v. Lapenias* (2021) 67 Cal.App.5th 162, 171 (*Lapenias*).) Our Supreme Court explained that CSAAS testimony is permitted " 'to explain the emotional

7.

antecedents of abused children's seemingly self-impeaching behavior,' " such as delayed disclosure of the abuse. (*McAlpin*, *supra*, 53 Cal.3d at pp. 1300–1301; accord, *Lapenias*, at p. 172.) An expert's explanation of CSAAS "is admissible to rehabilitate [a complaining] witness's credibility when the defendant suggests that the child's conduct after the incident—e.g., a delay in reporting—is inconsistent with his or her testimony claiming [sexual abuse]." (*McAlpin*, at p. 1300; see *People v. Sedano* (2023) 88 Cal.App.5th 474, 479 (*Sedano*).)

On the other hand, CSAAS evidence is not admissible to prove that a child was in fact sexually abused. (*McAlpin*, *supra*, 53 Cal.3d at p. 1300.) As a result, testimony regarding CSAAS must not " 'describ[e] the components of the syndrome in such a way as to allow the jury to apply the syndrome to the facts of the case and conclude the child was sexually abused.' [Citation.] Overall, the testimony must respect the ' " 'fine but essential' " ' line between an ' " 'opinion which would be truly helpful to the jury and that which merely conveys a conclusion concerning [the] defendant's legal guilt.' " ' " (*Sedano*, *supra*, 88 Cal.App.5th at p. 480.)

"Despite continuing advancement in the understanding of how children commonly react to sexual abuse, CSAAS evidence remains 'a valid and necessary component of the prosecution case in matters involving child abuse.' " (*Sedano*, *supra*, 88 Cal.App.5th at p. 479, fn. 5, quoting *People v. Munch* (2020) 52 Cal.App.5th 464, 466 (*Munch*) [concluding that the Supreme Court's reasoning in *McAlpin* "is as valid today as it was in 1991"].)

### C.     Standard of Review.

" 'When expert opinion is offered, much must be left to the trial court's discretion.' [Citation.] The trial court has broad discretion in deciding whether to admit or exclude expert testimony [citation], and its decision as to whether expert testimony

meets the standard for admissibility is subject to review for abuse of discretion." (*People v. McDowell* (2012) 54 Cal.4th 395, 426.)

## II. The Trial Court Did Not Abuse its Discretion by Admitting the Testimony of Dr. Christopherson.

Defendant contends that the trial court abused its discretion by admitting the testimony of Dr. Christopherson because CSAAS is scientifically unreliable and should have been excluded under the *Kelly*[1] rule. This criticism has been recognized by courts in other states, particularly New Jersey and Kentucky. Moreover, defendant argues, by its very nature CSAAS evidence will always be used by a jury to support the conclusion that the alleged victim's claim of abuse is true.

The *Kelly* rule "conditions the admissibility of evidence based on a new scientific method of proof on a showing that the technique has been generally accepted as reliable in the scientific community in which it developed." (*People v. Shirley* (1982) 31 Cal.3d 18, 34) The rule applies "only to expert testimony 'based, in whole or part, on a technique, process, or theory which is *new* to science and, even more so, the law.' " (*Lapenias*, *supra*, 67 Cal.App.5th at p. 173.) Moreover, it applies only if " 'the unproven technique or procedure appears in both name and description to provide some definitive truth which the expert need only accurately recognize and relay to the jury. The most obvious examples are machines or procedures which analyze physical data.' " (*Ibid*.)

Courts including *Lapenias* and *Munch* have rejected the claim that *Kelly* applies to CSAAS evidence. The *Lapenias* court explained,

> "[T]he theory of CSAAS is not new. [Citation.] Further, CSAAS testimony does not purport to provide a definitive truth; rather, the expert testimony attempts to disabuse jurors of misconceptions they might hold about the conduct of children who

---

[1] Defendant refers to the rule as the "*Kelly-Frye*" rule, based on the rulings of *People v. Kelly* (1976) 17 Cal.3d 24 and *Frye v. United States* (D.C. Cir. 1923) 293 F. 1013. " '[T]he rule is now the *Kelly* rule in California after changes to the Federal Rules of Evidence that superseded *Frye*.' " (*Lapenias*, *supra*, 67 Cal.App.5th at p. 173, fn 2.)

have been sexually abused. In short, expert CSAAS testimony is not ' " 'scientific' " evidence' subject to the *Kelly* rule." (*Lapenias, supra,* 67 Cal.App.5th at p. 173.)

We agree with this analysis. (See *Munch, supra,* 52 Cal.App.5th at pp. 472–473 [rejecting challenge to CSAAS evidence under the *Kelly* rule].)

CSAAS evidence is not admissible to prove the truth of sexual abuse nor has that ever been its purpose. (See *People v. Wells* (2004) 118 Cal.App.4th 179, 188.) It was admitted here for the permitted and limited purpose of offering possible explanations for the victims' seemingly paradoxical behaviors following the alleged incidents (delayed reporting, lack emotional reactions immediately after the alleged abuse, continued socialization with defendant after the alleged abuse, imperfect recollections of the alleged incidents, and failure to protect themselves from the alleged abuse). (*McAlpin, supra,* 53 Cal.3d at p. 1301 [CSAAS evidence admissible to disabuse jury of misconceptions about how children react to molestation and to explain abused children's seemingly self-impeaching behavior]; *People v. Patino* (1994) 26 Cal.App.4th 1737, 1744–1745 (*Patino*); accord, *People v. Flores* (2024) 101 Cal.App.5th 438, 456 ["When a victim's credibility is placed at issue due to 'paradoxical behavior, including a delay in reporting,' CSAAS testimony is admissible to disabuse a jury of misconceptions about how a child reacts to molestation."])

Defendant cites cases from other states that have criticized or excluded the use of CSAAS evidence and asks that this court join those courts by scrutinizing CSAAS evidence and narrow its use to explain delayed disclosure or exclude it entirely. But the California Supreme Court in *McAlpin* held that CSAAS evidence is admissible in California for the purposes for which it was used here. (*McAlpin, supra,* 53 Cal.3d at p. 1301.) We concur with the *Munch* court, which held that we are bound by *McAlpin*.[2]

---

[2] We reject defendant's suggestion that *McAlpin* is not controlling because the issue in that case (1) "was testimony pertaining to recantation by parents when there have been allegations of child sexual abuse, which the Court analogized to the delay of reporting in rape and child sex abuse cases" and (2) that *McAlpin* made no reference to the underlying

(*Munch*, *supra*, 52 Cal.App.5th at p. 468 [holding that court of appeal is bound by *McAlpin* that CSAAS evidence is admissible]; see *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)  "That other jurisdictions may disagree with it does not change its impact on California cases." (*Munch*, at p. 468.)

> **A.      Dr. Christopherson's testimony was sufficiently beyond the common experience to be of assistance to the jury.**

Defendant contends that the prosecution failed to show that CSAAS evidence was " '[r]elate[d] to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.' (Evid. Code, § 801, subd. (a).)"  Defendant contends that such evidence would not assist the jury in this case because the jurors did not harbor misconceptions about victims of child sexual abuse and because such misconceptions are less prevalent than they were in the past.  Defendant cites examples from the voir dire proceedings of prospective jurors, some of whom said that because they worked with children, they would be inclined to believe a child, and others who said they had personal experiences with sexual abuse allegations as a victim or by knowing an alleged perpetrator.  Defendant also points to news articles regarding child sexual abuse allegations involving celebrities, religious institutions, and athletes, and contends that this "onslaught of publicity" about delayed disclosure by victims had made the general public aware that children may not immediately disclose the abuse they have suffered or that they may maintain relationships with their abusers.

These examples do not negate the trial court's determination that the CSAAS testimony would assist the jury.  The statements of certain prospective jurors regarding their familiarity with children or about child sexual abuse does not demonstrate that

---

literature describing CSAAS.  Defendant reads *McAlpin* too narrowly.  While the specific factual context in *McAlpin* involved an adult's third-party reaction to abuse, the Supreme Court approved the holding of *People v. Bowker* (1988) 203 Cal.App.3d 385 that CSAAS evidence is admissible to correct juror misconceptions about the reactions of a child who has been sexually abused, which is what CSAAS was admitted for this in this case.

they—let alone the jurors who were ultimately chosen to sit on the jury—had knowledge of the principles of CSAAS that Christopherson explained in his testimony. The court was well within its discretion to admit CSAAS evidence given the subject matter of this case, the behaviors of the children following the alleged acts of abuse, and the defendant's attacks on their credibility.

**B.      The CSAAS evidence was not more prejudicial than probative.**

Defendant argues Christopherson's testimony was substantially more prejudicial than probative. Defendant claims the probative value of Christopherson's testimony was low because it was "common knowledge that sexually abused children sometimes delay disclosure." On the other hand, defendant claims that "misleading general expert testimony on CSAAS … posed a great danger of unfairly bolstering the complaining witnesses' testimony and invading the jury's province."

The probative value of Christopherson's testimony was not low. Both S. and H. exhibited behaviors described by CSAAS, such as secrecy, helplessness, and delayed or unconvincing disclosure. The purpose of admitting Christopherson's testimony was to provide a possible explanation for these behaviors if the jury otherwise found S. and H. to be credible witnesses. Moreover, defendant has not shown the principles comprising CSAAS are of sufficiently common knowledge to mandate a finding such evidence would not be of assistance to the jurors.

The fact Christopherson's testimony may have proved harmful to defendant's case did not make it unduly prejudicial within the meaning of Evidence Code section 352. (*People v. Megown* (2018) 28 Cal.App.5th 157, 164.) Evidence only creates "undue prejudice" if the evidence tends to evoke an emotional bias by the jurors against the defendant, and the evidence has little effect on the matters at issue in the particular case. (*Ibid*.)

There was no such risk of emotional bias here. Christopherson made clear he did not know the facts of this case, was not opining on whether the alleged victims were in

fact abused, and that CSAAS could not be used to predict whether a child was abused. He provided general information about how children who were abused may react. His testimony was but one component of the evidence available to the jury to evaluate the prosecutor's allegations against defendant. Also received were the testimonies of S. and H. about the abuse they suffered, as well as the testimony of other witnesses to whom the children had previously disclosed the abuse.

Further, the jury was instructed that it could not use Christopherson's testimony as evidence defendant abused S. or H., and we presume the jury followed the instruction. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852 [jury presumed to follow instructions].)

### C. Dr. Christopherson's testimony did not violate defendant's due process right to a fair trial.

Defendant next asserts that, assuming it was error to admit Dr. Christopherson's testimony, the trial court's admission of such evidence over his objections violated his due process right to a fair trial. We disagree.

"As a general matter, the ordinary rules of evidence do not impermissibly infringe on the accused's right to present a defense." (*People v. Hall* (1986) 41 Cal.3d 826, 834.) Here, defendant's due process claim is based on the premise the admission of the CSAAS evidence violated state evidentiary law. Because we have found no evidentiary errors regarding the admission of the CSAAS expert testimony, there is no basis for defendant's due process argument.

Further, as defendant concedes, this court rejected the same argument in *Patino*, *supra*, 26 Cal.App.4th 1737, more than 30 years ago, explaining:

> "The United States Supreme Court has held the admission of relevant evidence of the battered child syndrome does not violate the due process clause of the Fourteenth Amendment. (*Estelle v. McGuire* (1991) 502 U.S. 62, 69–70.) Battered child syndrome evidence is analogous to CSAAS evidence. (*People v. Bowker*, *supra*, 203 Cal.App.3d at pp. 393–394.) For this reason, there can be little doubt the due process dimensions of both types of evidence [are] similar if not identical. Therefore,

introduction of CSAAS testimony does not by itself deny appellant due process." (*Patino*, *supra*, 26 Cal.App.4th at p. 1747.)

We agree with this court's decision in *Patino* and find no due process violation.

## III.     Instructing the Jury With CALCRIM No. 1193 Did Not Violate Defendant's Rights to Due Process and a Fair Trial.

Defendant claims CALCRIM No. 1193 erroneously instructed the jury it could use the CSAAS evidence to evaluate the "believability" of the victim's testimony, which violated defendant's right to due process of law and the right to a fair trial.

### A.     Relevant procedural history

The trial court instructed the jury with CALCRIM No. 1193, as follows:

> "You have heard testimony from Dr. Jason Christopherson regarding sexual abuse or [CSAAS]. [CSAAS] relates to a pattern of behavior that may be present in child sexual abuse cases. Testimony as to the accommodation syndrome is offered only to explain certain behavior of an alleged victim of child sexual abuse. Dr. Christopherson's testimony about [CSAAS] is not evidence that … defendant committed any of the crimes charged against him or with conduct of any of the crimes he was not charged. You may consider this evidence only in deciding whether or not [S.]'s conduct and [H.]'s conduct was consistent with the conduct of someone who has been molested and in evaluating the believability of their testimony."

The jury was also instructed: (1) it must "[p]ay careful attention to all of these instructions and consider them together" (CALCRIM No. 200), (2) "certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and no other" (CALCRIM No. 303), (3) "[y]ou alone must judge the credibility or believability of the witnesses," (CALCRIM No. 226), and (4) "[y]ou must consider the [expert] opinions, but you are not required to accept them as true or correct" (CALCRIM No. 332).

### B.     Standard of Review

Instructional error is subject to de novo review. (*People v. Lewis* (2023) 14 Cal.5th 876, 900; *People v. Manriquez* (2005) 37 Cal.4th 547, 584.) An " 'appellate court

reviews the wording of a jury instruction de novo and assesses whether the instruction accurately states the law.' " (*Lewis*, at p. 900; *People v. Mitchell* (2019) 7 Cal.5th 561, 579.) The appellate court views the challenged instruction " ' "in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner." ' " (*Lewis*, at p. 900; *Mitchell*, at p. 579.) " 'Jurors are presumed able to understand and correlate instructions and are further presumed to have followed the court's instructions.' " (*People v. Thomas* (2023) 14 Cal.5th 327, 382.) If reasonably possible to do so, reviewing courts interpret an instruction in a manner that supports the judgment, as opposed to defeating it. (*People v. Mani* (2022) 74 Cal.App.5th 343, 377; *People v. Quinonez* (2020) 46 Cal.App.5th 457, 465.)

### C. Analysis

Defendant claims that by instructing the jury with CALCRIM No. 1193, the trial court violated his rights to due process and a fair trial because the instruction misstated the law and permitted the jury to rely on CSAAS as evidence the victims were telling the truth about the abuse they suffered. Specifically, defendant claims the last sentence of the instruction erroneously informed the jury that they could use CSAAS evidence to evaluate the "believability" of the victims' testimonies, which defendant claims is an impermissible purpose because it allows the jury to use CSAAS evidence as "substantive evidence of [defendant's] guilt." (Italics omitted.) Defendant compares CALCRIM No. 1193 unfavorably with its predecessor, CALJIC No. 10.64, which he claims properly advised the jury CSAAS evidence was restricted to determining whether the alleged victim's reactions were not inconsistent with having been molested and did not instruct the jury to use CSAAS testimony to assess the victim's credibility.

Appellate courts have consistently rejected the claim that CALCRIM No. 1193 misstates the law regarding CSAAS or improperly lowers the prosecution's burden of proof. In *People v. Gonzales* (2017) 16 Cal.App.5th 494, 504, the court explained,

"The purpose of CSAAS is to understand a child's reactions when they have been abused. [¶] A reasonable juror would understand CALCRIM No. 1193 to mean that the jury can use [the expert's] testimony to conclude that [the child's] behavior does not mean she lied when she said she was abused. The jury also would understand it cannot use [the expert's] testimony to conclude [the child] was, in fact, molested. The CSAAS evidence simply neutralizes the victim's apparently self-impeaching behavior. Thus, under CALCRIM No. 1193, a juror who believes [the expert's] testimony will find both that [the child's] apparently self-impeaching behavior does not affect her believability one way or the other, and that the CSAAS evidence does not show she had been molested. There is no conflict in the instruction." (Accord, *Munch*, *supra*, 52 Cal.App.5th at p. 474 [rejecting contention CALCRIM No. 1193's statement that jurors may use CSAAS evidence " 'in evaluating the believability' " of the child's testimony means jurors will improperly use such evidence to find defendant guilty]; *Lapenias*, *supra*, 67 Cal.App.5th at pp. 175–176 [concluding CALCRIM No. 1193 "accurately instructs the jury on the law: the proper use—and the proper limitations on the use—of CSAAS evidence"]; *People v. Page* (2025) 114 Cal.App.5th 1022, 1032 [" 'Reasonable jurors would not understand the instruction to mean that if they find the characteristics of [CSAAS] to be satisfied, this indicates that [the complaining witness] was necessarily telling the truth.' "].)

We agree with this analysis and therefore find the trial court did not err by instructing the jury with CALCRIM No. 1193. When looking at the behaviors abused children sometimes exhibit following abuse (delayed reporting, lack of emotional reactions immediately after the alleged abuse, continued socialization with the defendant after the alleged abuse, imperfect recollections of the alleged incidents, and failure to protect themselves from the alleged abuse), the instruction is understood to mean CSAAS can show S.'s and H.'s behaviors were consistent with children who have been abused. In other words, the jury may properly consider CSAAS as mitigating the harm to S.'s and H.'s credibility posed by, for example, the delays in their reporting of the abuse and their

inability to consistently describe the abuse. Put differently, if the jury finds a child witness credible based on the evidence before them except for the apparent self-impeaching behavior of the child, it can use the CSAAS evidence to neutralize or explain behaviors that might otherwise cause the jury to question the child's credibility. Contrary to defendant's claim, CSAAS evidence does not affirmatively establish that a child was sexually abused, it merely prevents behavior that would otherwise be seen as self-impeaching from destroying the child's credibility.

Further, CALCRIM No. 1193 does not instruct the jury that CSAAS evidence may be used to corroborate the claims of the abuse. To the contrary, the instruction makes clear CSAAS testimony "is not evidence that the defendant committed any of the crimes charged against him." (CALCRIM No. 1193.) As noted above, the jury received additional instructions which made clear that certain evidence was received for a limited purpose, that they alone were the judge of the credibility of witnesses, and that while required to consider expert testimony, they were not required to accept it as true or correct.

Viewing CALCRIM No. 1193 in the context of the other instructions given to the jury—as we must[3]—and presuming the jury understood and correlated the instructions they were given—as we must[4]—there is not a reasonable likelihood the jury applied CALCRIM No. 1193 in an impermissible manner. Taken together, the jury was properly instructed to consider Christopherson's testimony for its limited and proper purpose. Accordingly, we reject defendant's contention the trial court erred in instructing the jury with CALCRIM No. 1193.

---

[3]     *People v. Lewis*, *supra*, 14 Cal.5th at p. 900; *People v. Mitchell*, *supra*, 7 Cal.5th at p. 579.

[4]     *People v. Thomas*, *supra,* 14 Cal.5th at p. 382.

17.

**IV. The Abstract of Judgment Misstates Defendant's Sentence and Must be Corrected.**

Defendant was sentenced to an aggregate term of 90 years to life in prison as follows: consecutive sentences of 25 years to life on each of counts 4, 5, and 2, and a consecutive term of 15 years to life on count 1. An additional sentence of 25 years to life on count 3 was also imposed and stayed pursuant to section 654. However, the abstract of judgment appears to reflect defendant was sentenced to both life without the possibility of parole on all counts *and* the terms pronounced orally by the trial court at the sentencing hearing.

The court invited briefing from the parties addressing this discrepancy and whether and how the abstract of judgment should be corrected. Counsel for the parties agree the abstract of judgment requires correction to conform to the trial court's oral pronouncement of sentence.

"When an abstract of judgment does not reflect the actual sentence imposed in the trial judge's verbal pronouncement, this court has the inherent power to correct such clerical error on appeal, whether on our own motion or upon application of the parties." (*People v. Jones* (2012) 54 Cal.4th 1, 89.)

To correct the error described above, we direct the trial court to issue an amended abstract of judgment to reflect the following: consecutive sentences of 25 years to life on each of counts 4, 5, and 2, a consecutive term of 15 years to life on count 1, and 25 years to life on count 3, stayed.

18.

## DISPOSITION

The judgment is affirmed.  The trial court is directed to (1) issue a corrected abstract of judgment to reflect the following:  consecutive sentences of 25 years to life on each of counts 4, 5, and 2, a consecutive term of 15 years to life on count 1, and 25 years to life on count 3, stayed, and (2) forward the corrected abstract of judgment to the relevant entities.


                                                                    PEÑA, J.

WE CONCUR:


HILL, P. J.


DETJEN, J.

19.